No. 56.—Hammutual Johnson, plaintiff in error, *vs.* Arthur H. Watson, defendant in error.

A parol contract for the sale of goods, to be delivered, and which the parties reasonably expected would be delivered, within a year, though the price was to be paid after that period, is not within the statute of frauds; because, in such case, all that is on one side to be performed, namely, the delivery of the goods, is to be done within the year.

If there has been a delivery, either actual or virtual, by the vendor, in pursuance of a verbal sale, he has lost the power of retraction, under cover of the statute, if the vendee chooses to treat the contract as complete.

The statute of frauds has no application to a contract which has been fully performed on both sides.

The question of delivery by the vendor, and acceptance by the vendee, is always a question of fact, exclusively for the jury.

For the facts of the case, and the error assigned, see the opinion of the Supreme Court, delivered by his Honor Judge Lumpkin.

Judge Warner, having been of counsel for the plaintiff in error, in the court below, delivered no opinion in this case.

Obadiah Warner, for the plaintiff in error.

.The first ground of error assigned is, that the court below committed error in not awarding a nonsuit in the cause, upon motion of counsel for plaintiff in error, made after the plaintiff in the court below had closed his testimony. From the evidence of the plaintiff in the court below, upon which he relied for title to the property in dispute, he had no right to recover.

His right to the property depended *entirely* upon the contract between the parties; that contract was void under the 4th and 17th sections of the statute of frauds. —*Hotch. Dig.* 436.

1st. If the consideration of the contract was, that the plaintiff below should go to Macon, and bring to defendant her negroes, which were there, and to Columbus, and procure her runaway negro, and to attend to the business of Mrs. Johnson for a while, as testified to on the part of witness, Walton, as being the consideration of the contract of sale, then the contract was void under the 17th section of the statute of frauds—the goods (the negro) being of the value of more than ten pounds, there being no earnest money paid, no acceptance of the goods by Watson, or delivery of the negro to him, nor any memorandum in writing of the contract.—*See Bennet* vs. *Hull,* 10 *John. Rep.* 364; 5 *Wend.* 139; *Howe* vs. *Palmer,* 5 *Eng. Com. L. Rep.* 303; *ibid.* 419.

It seems to have been admitted by the court below, that there was no earnest money paid, and no delivery of the property, when the contract was made, so as to take it out of the statute.

2d. If the right of Watson to recover the property depended upon that portion of the contract, by which he was to attend to the business of Mrs. Johnson for two years, and then to have the negro, he must fail, because that portion of the contract was void under the 4th section of the statute of frauds, being a contract not to be performed in one year. The agreement was made in the first part of the year 1840. Watson was to attend to the business of Mrs. Johnson for two years, for the negro in dispute. Watson, by the terms of the contract, could not have performed it within the year.

It is admitted, that if the contract *may* be performed within the year, it is not

Johnson *vs.* Watson.

within the statute. But in the present case, by the express terms of the contract, it could not be performed until after the expiration of two years.

As to contracts not to be performed in one year, see *Shute* vs. *Dorr*, 5 *Wend.* 204; *Lower* vs. *Winters*, 7 *Cowen*, 263; *Fenton* vs. *Emblers*, 3 *Burr.* 1278; *Burch* vs. *the Earl of Liverpool*, 17 *Eng. Com. L. Rep.* 404.

The contract between the parties, it is true, was an executory contract.—2 *Kent Com.* 449–450. The services were to be *performed* by Watson. The statute applies as well to executory contracts as to contracts executed.—*Bennett* vs. *Hull*, 10 *John.* 364.

3d. But the contract was an entire contract, based upon the two foregoing considerations. Being an entire contract upon two considerations, if one was good in law, and the other void under the statute of frauds, the *whole contract* is void.

Admitting there had been earnest money paid, or a delivery of the property, at the time the contract was made, so as to have supported a part of the consideration in law, yet another part of the consideration of the same contract being obnoxious to the statute, the whole is void. Upon this point, see *Van Alstine* vs. *Wimple*, 5 *Cowen*, 162; *Crawford* vs. *Morell*, 8 *John.* 253; *Chater* vs. *Beckett*, 7 *Term Rep.* 201.

4th. The contract, then, was wholly void under which Watson claimed title, and therefore no property passed to him by virtue of it.—2 *Greenleaf, Ev.* 197.

If the contract *was void*, then no subsequent ratification or recognition of it, on the part of Mrs. Johnson, could make it void.

The original contract not being binding upon her, it could not form the basis of a new promise or ratification on her part.—*Smith* vs. *Ware*, 13 *John.* 257; 1 *Aik.* 354; 8 *Cowen*, 361.

The contract of an infant, originally void, cannot be ratified after he comes of age, though a contract *merely voidable* may be *ratified.*—2 *Kent Com.* 334–335; 2 *Swift's Dig.* 82; 1 *Story Com. on Eq.* 303–338.

The doctrine of part performance does not apply, because that doctrine is not applicable to this branch of the statute, and relates only to contracts respecting real property.—1 *Swift's Dig.* 263. C. Justice Kent, *in Jackson* vs. *Pierce*, (2 *John. Rep* 223,) said " that a *court of law* has never decided that a part performance will take a parol contract in relation to land out of the statute."

5th. A writ of error lies for not awarding a nonsuit, when the plaintiff's evidence fails to support his case.—*Foot* vs. *Sabin*, 19 *John.* 154; *Pratt* vs. *Hull*, 13 *John.* 334; *Turnbull* vs. *Rivers*, 3 *McCord*, 131; *Parnell* vs. *Wilson, Dudley's Law and Equity Reports*, 371. The true test of the propriety of a nonsuit is, that if the case had gone to the jury on the evidence, and a verdict had been found for the plaintiff, the court would have set aside the verdict.—*Graham on N. T.* 280; 6 *Mass. Rep.* 336.

The court below then committed error in not awarding the nonsuit moved for.

The second ground of error assigned is, that the court below refused to charge the jury as requested by the counsel for the plaintiff in error.

The charge requested was a proper and correct one upon the facts. It is true, that the court does say in its charge, " that if the plaintiff, Watson, was prosecuting his claim under the contract, that claim would be obnoxious to the statute of frauds. The court, instead of responding directly to the request of counsel to give the charge we deemed ourselves entitled to, under the law, goes farther, and instructs the jury, " that the principles contended for by defendant's counsel *may not apply to the case.*" It is true, also, that the court says in its charge, that the principles contended for by defendant's counsel are founded in rules of law, recognized by the court, *when a case arises for their application.* The inference properly drawn by the jury, in relation to this part of the charge, undoubtedly was, that they, in making up their verdict, were not necessarily to be governed by these principles of law, because not necessarily applicable to the case. The charge requested made these principles of law applicable, and the court was asked to apply them to the case. Now, if these principles of law, embraced in the charge requested, were applicable to the case then before the

court, there was error in not giving them their proper and full application to the facts when requested by counsel. We think that it has already been shown, that they were not only *applicable*, but that the title of Watson wholly depended upon them.

The principles of law requested to be charged, made the *contract* void at all events, and entirely defeated Watson's right to recover. The charge given made it void, or not void, upon a contingency, which the jury might believe had or had not happened, to wit, the subsequent act of Mrs. Johnson, and depending upon their opinion, as to the existence of these subsequent acts.

The court below says, in its charge, "that there is some evidence establishing *the recognition* of the title in the plaintiff to the property, and that after the *contract, which the plaintiff shows as evidence of his title* after her hire was out, she was seen in the possession of the plaintiff."

Now, this possession was one of the subsequent acts of recognition, referred to in the charge, which must have conveyed to the mind of the jury the idea that the *contract was not void*, if subsequently recognized or ratified by the acts of Mrs. Johnson. The inference the jury might properly draw from the charge was, that though the contract *might be void*, yet it was capable of ratification subsequently, and was made binding upon Mrs. Johnson by her subsequent acts. As to the duty of the court to charge the jury, as requested by counsel, see *4th Ala. Rep.* (*N. S.*) 116 ; *5 Stewart and Porter,* 330 ; *2 Con. Rep.* 590.

The exchange of negroes was made *before* the two years expired. The exchange of itself could not amount to a sale, for Mrs. Johnson was receiving Jerusha "for a while," to whom she had never parted title ; and her statement, that it was only "for a while," (meaning thereby that Watson should again have possession of her,) was not such an act as would by itself divest Mrs. Johnson of her title.

The original contract being void, the parties stood in the same condition, so far as any right accruing under it, was concerned to either, as if it had never been made. Mrs. Johnson was under no legal obligation to send the negro back to Watson. The title was in her before the exchange, and *that* could not amount to an *absolute sale*, for there was no consideration for her promise, (if her statement amounts to one,) to send Jerusha back to Watson "after a while." It could not operate as a gift, for a gift must be expressly proven to be such, and a delivery under and by virtue of the gift. Nothing was proven, going to show that a gift was intended by either party.

As to the third ground of error—

The contract, if it had been valid, conferred *no title* on Watson. It was only a contract *to sell,* and not a *sale* itself. There is a distinction between a contract to sell, and an absolute sale.—13 *Mass. Rep.* 87. The remedy of the defendant in error, if he had any, (supposing the contract valid,) was by an action for a breach of the contract.

W. D. ALEXANDER, for the defendant in error,

Referred to *Cooper* vs. *Elston*, 7 *Term Rep.* 14 ; *Gadsden* vs. *Lanee,* 1 *McMullan's Eq. Rep.* 87 ; 2 *Bailey* 615 ; 5 *Cowen's Rep.* 445 ; 2 *Kent's Com.* 395–6 ; 1 *Cowen's Treatise,* 51 ; 11 *Johns. Rep.* 284 ; 1 *East,* 193 ; *Hilliard on Sales,* 9 *and* 75 ; 13 *Johns. Rep.* 294.

*By the Court*—LUMPKIN, Judge.

This was an action of trover, brought by Arthur H. Watson against Hammutual Johnson, in Merriwether Superior Court, for the recovery of a female slave, by the name of Jerusha, and tried before Judge Hill at the February Term, 1846. It appeared from the evidence that some time in the fore part of the year 1840, it was agreed *verbally* between the parties, that Watson should go to the city of Macon, and bring home to Mrs. Johnson some slaves of hers which were in that place ; and also to

Columbus, and catch and bring home to her a fellow of hers, which was lurking about the city.  He was likewise to attend to her business for two years ; and for these services she agreed to let him have Jerusha, the negro sued for, valued at five hundred dollars.  The woman at the time of the contract was not present, being hired out in Columbus; and it was understood that Watson was to go and get her when her time of hiring had expired.  Watson, in pursuance of the agreement, brought home to Mrs. Johnson her slaves, both from Macon and Columbus, being absent some seven days in the two trips; and the witnesses considered his services worth a dollar a day.  He attended to her business during the years 1840 and 1841, and the proof was, that this service was worth five hundred dollars.  At the expiration of the year 1840, Watson went after Jerusha, and took her in possession.  Within a few days thereafter, at the request of Mrs. Johnson, he exchanged the girl with her for another by the name of Lucy, which was understood by the parties to be a temporary swap only, made on account of Lucy's bad habits, and with a view to their correction by Watson.  Mrs. Johnson, after thus obtaining the possession of Jerusha, refused to return her, and the suit below was brought for her recovery.

The defendant's counsel moved a nonsuit, on the ground that the contract was within the statute of frauds, there being no note or memorandum thereof in writing, signed by the party sought to be charged therewith, nor any delivery of the slave, nor any earnest money paid, to bind the bargain at the time it was made ; and because said contract was not to be performed within a year, which motion the court below overruled. And in his charge to the jury, the presiding judge submitted to them upon the testimony, to find whether or not there had been a delivery of the property : to all of which the defendant below by his counsel excepted. And the question for us to examine is, does this contract fall either within the 5th clause of the 4th section, or the 17th section of the statute of frauds ?

It would be a vain, if not a hazadous effort, for us to undertake to analyze the statute of frauds, and to review the numerous questions and decisions which have arisen upon it ; the explanation of which, a distinguished jurist in the country thinks could not have cost a less sum than one million pounds sterling.  Ours will be the less ambitious task of stating a few clear and well-established principles, which apply to and must necessarily control the present case.

And we hold, in the first place, that this contract did not *originally* come within the statute.  Where A sells goods to B, to be delivered within the year—though the price was to be paid after the period— the contract is not within the statute ,(*Boydell* vs. *Drummond*, 11 *East*, 152 ; *Bracegirdle* vs. *Heald*, 1 *Barn. and Ald.* 727 ; *Holbrook* vs. *Armstrong*, 1 *Fairf.* 31,) and the reason assigned is, because, in such case, *all that is on one side to be performed*—namely, the delivery of the goods, or a reasonble expectation thereof—is to be done within a year.

In the case of *Donellan* vs. *Read*, (3 *Barn and Adolph.* 899,) Littledale, Justice, in delivering the judgment of the court, says : " As to the contract not being to be performed within a year, we think that as the contract was entirely executed on one side within a year, and as it was the intention of the parties, founded on a reasonable expectation that it

should be so, the statute of frauds does not extend to such a case. In case of a parol sale of goods, it often happens that they are not to be paid for in full until after the expiration of a longer period of time than a year; and surely the law would not sanction a defence on that ground, when the buyer had had the full benefit of the goods on his part." The learned judge, then referring to the case of *Boydell* vs. *Drummond*, (11 *East*, 142,) remarks : "Here the contract was not completely executed on one side, and the case was such that in common course of the publication it was not expected that it should be completed in a year." In the case under consideration, it is true that a part of the price was not to be paid within a year. The contract was entered into in the first of the year 1840, and the purchaser was to superintend the business of Mrs. Johnson, during that and the succeeding year, as part payment for the slave. Still, as the girl was to be taken possession of by the vendee, at the end of the time for which she was then hired, and it would seem, from the proof, that it was the Christmas following the trade, and was actually found in his possession, shortly thereafter, and the legality of that possession distinctly recognized, instead of being disputed by her, the seller is surely estopped from defending herself under the statute.

Indeed, having got possession of Jerusha under a contract of exchange, and under an express promise that she was to be redelivered after a short time, she would not be allowed to hold on to the negro, and deny the title of the plaintiff.

Again : it is quite clear, say the authorities, that if there has been a delivery, either actual or virtual, by the vendor, in pursuance of a *verbal sale, he* has lost the power of retraction, under cover of the statute, if the vendee chooses to treat the contract as complete.—*Roberts on Frauds*, 178. It is unnecessary to stop to apply this doctrine to the obvious facts of the present case.

No fixed rule can be laid down, as to what shall constitute a delivery of goods. One thing, however, is well settled, namely : that there need not be an actual *manual tradition* at the time of sale. In the sale of a ship, for instance, or goods at sea, the delivery must, in the nature of things, be symbolical. Taking an order from the vendor on the ship-keeper, or wharfinger, or warehouseman, for goods, has been held to be a sufficient delivery—to pass the property to the vendee, even if the vendor take the vendee within sight of ponderous articles, and show them to him, and the vendee suffer them to lie where they are, is equivalent to a delivery—*Atkinson* vs. *Maling*, 2 *Term Rep.* 462 ; *Hollingsworth* vs. *Napier*, 3 *Caines' Rep.* 182 ; *Searle* vs. *Keeves*, 1 *Esp. Rep.* 598 ; *Jewett* vs. *Warren*, 12 *Mass. Rep.* 300 ; 11 *John. Rep.* 178 ; *ib.* 283 ; 4 *Wheat.* 85 ; 3 *Barn. and Ald.* 321 ; *ib.* 680. Here, again, we should deem it a useless consumption of time to show, how fully and completely the contract between Watson and Mrs. Johnson, as it respects the delivery of the woman, is met and embraced in the principles of these adjudications.

But be that as it may, the question of delivery by the vendor and the acceptance by the vendee, is one of fact, which was properly left to the jury.—*Roberts on Frauds*, 174. The case of *Chaplin* vs. *Rogers*, (1 *East*, 192,) turned upon this very point. On the circuit trial, before Hotham, Sellon, for the defendant, objected that the contract of sale was void by

the statute of frauds; being for a commodity, no part of which was delivered, and of which there was no acceptance by the defendant. But the learned baron left these questions to the jury, who found for the plaintiff on both points. A rule was obtained, calling on the plaintiff to show cause why the verdict should not be set aside, and a new trial granted, on the ground that the judge had left that as a question of fact for the jury, which he himself ought to have decided, as an objection in point of law, arising on the statute of frauds. Besides, it was insisted that the evidence did not warrant the verdict. Lord Kenyon, C. J.—"It is of great consequence to preserve unimpaired the several provisions of the statute of frauds, which is one of the wisest laws in our statute book. My opinion will not infringe upon it; for here the report states that the question was specifically left to the jury, whether or not there was an acceptance of the hay by the defendant; and they have found that there was, which puts *an end* to any *question of law.* I do not mean to disturb the settled construction of the statute, that in order to take a contract for the sale of goods of this value out of it, there must either be a part delivery of the thing, or a part payment of the consideration, or the agreement must be reduced to writing, in the manner therein specified. *But I am not satisfied in this case that the jury have not done rightly in finding the fact of a delivery."* The other judge agreed that there was sufficient evidence of a delivery to and acceptance by the defendant to leave it to the jury. So thought Judge Hill on the trial below; and being satisfied with the verdict, he refused a new trial. The jury having found the fact of delivery for the plaintiff, the case is taken out of the statute of frauds. We see no error in this view of the subject.

Admitting, however, that the English statute of frauds and perjuries, (29 *Charles* 2,) the provisions of which prevail in this State is all that its most zealous advocates and admirers claim for it, "the most comprehensive, salutary, and important legislative regulation on record, affecting the security of private rights;" and that no contract for the sale of goods for the price of £10 or upwards, shall be valid, except the buyer shall accept a part of the goods so sold, and actually receive the same, or give something in earnest to bind the bargain, or in part payment; or unless some note or memorandum, or writing of the bargain, be made and signed by the parties, to be charged, or their agents thereunto lawfully authorized; and that with respect to property, of whatever value, that no **contract** or agreement regarding the same shall be valid, unless the thing contracted for is to be delivered within one year, or unless the contract be made in writing, and signed by the party, or his agent, who is to be charged therewith. I say, concede all this, and that the contract between Watson and Mrs. Johnson is palpably obnoxious to every part and parcel of both these sections of the statute, nevertheless, this case may be rescued from all entanglement of the kind, upon the principle, *that the statute of frauds has no application to a contract which has been fully performed on both sides.*—*Barton* vs. *Collyer,* 4 *Bingham,* 309; *Shaw* vs. *Woodcock,* 7 *Barn. & Cress.* 73. Contracts which come within the statute of frauds, are void, not in the sense in which usurious or gaming contracts are, but merely because the court cannot enforce them, unless made out by a particular kind of evidence, prescribed by the statute. Money lost at play, or paid for usury, may be recovered back. Not so money paid on a ver-

23

bal agreement to answer for the debt or default of another : If A, in consideration of marriage with B, a widow, agrees verbally to convey the property of his intended wife to her children, and after marriage, fulfills his promise by actually delivering the property, no one would doubt their title.

The case of *Stone* vs. *Dennison*, (13 *Pick.*1,) is conclusive to this point, and is sound law.

Reuben Stone had been living for several years with David Dennison, his father being dead : George Eels was appointed his guardian, and it was agreed between all three of the parties; that the plaintiff should continue in the service of the defendant, for his board, clothing, and education, until he should arrive at the age of twenty-one—he being then fourteen years old.   When Stone came of age, he sued Dennison for his services, on the ground that they were worth more than the amount of the stipulated compensation.   The defendant relied upon the agreement, to which the plaintiff replied the statute of frauds, the agreement not being to be performed within a year, and not being in writing.   Chief Justice Shaw, in delivering the opinion of the court, says :   " We think the objection is answered, by the consideration that the contract has been completely performed on both sides.   The defendant is not seeking to enforce this agreement as an executory contract, but simply to show that the plaintiff is not entitled to recover upon a *quantum meruit*, as upon an implied promise.   But the statute does not make such a contract void.   The provision is, that no action shall be brought, whereby to charge any person, upon any agreement which is not to be performed within the space of one year, unless the agreement shall be in writing.   The statute prescribes the species of evidence necessary to enforce the execution of such a contract.   But where the contract has been in fact performed, the rights, duties, and obligations of the parties, resulting from such performance, stand unaffected by the statute."

In the case of *Boydell* vs. *Drummond*, (*East.* 142,) continues the learned judge, a case was put in the argument, of goods sold and delivered at a certain price, by parol, upon a credit of thirteen months.   There, as a part of the contract, was the payment of the price, which was not to be performed within the year ; a question was made, whether, by force of the statute, the purchaser is exempted from the obligation of the agreement, as to the stipulated price, so as to leave it open to the jury to give the value of the goods only as upon an implied contract.   In that case, said Lord Ellenborough, the delivery of the goods, which is supposed to be made within the year, would be a complete execution of the contract on the one part, and the question of consideration only would be reserved to a future period.   If a performance on *one side* would avoid the operation of the statute, *a fortiori*, would the entire and complete performance, on *both sides*, have that effect ?   Take the common case of a laborer, entering into a contract with his employer towards the close of the year, for another year's service, upon certain stipulated terms.   Should either party refuse to perform, the statute would prevent either party from bringing any action, whereby to charge the other upon such contract ; but it would be a very different question, were the contract fulfilled upon both sides, by the performance of the services on the one part, and the payment of money, from time to time, on account, on the other,

equal to the amount of the stipulated wages.    In case of the rise of wages
within the year, and the consequent increased value of the services, could
the laborer bring a *quantum meruit*, and recover more ?    Or, in case of the
fall of labor, and the diminished value of the services, could the employer
bring money had and received on the ground that, by the statute of frauds,
the original contract could not have been enforced ?    Such, we think, is
not the true construction of the statute.    We are of the opinion that it has
no application to *executed contracts.*

In the case before the court, the evidence shows, that in 1840 Watson
undertook to bring home several slaves from Macon, belonging to Mrs.
Johnson, a runaway from Columbus, and superintend her affairs for
*that* and the ensuing year ; in consideration of which, she sold him the
negro girl, Jerusha, then hired out at Columbus, and which he was
to take in possession at the expiration of the year, or contract of hiring.
In the beginning of 1841, he was found in the possession of the girl ; ex-
changed her temporarily for Lucy, another slave, belonging to Mrs.
Johnson, for the purpose of accommodating the latter.

He brought home the negroes from Macon and Columbus, and per-
formed the stipulated service.    If the negro Jerusha, was delivered, it is
quite clear that no part of the agreement remained unexecuted.    And
that fact has been found by the jury, and *we* think, in accordance with the
weight of evidence.

Upon any view of this case, then, we hold that the judgment of the
court below was correct, and ought to be affirmed.