**In the Matter of Jerry WOLMAN and Anne Wolman, Debtors.**

**No. 13072.**

United States District Court,
D. Maryland.

Nov. 5, 1971.

See also D.C., 314 F.Supp. 703.

---

Hyman P. Tatelbaum, Schimmel & Tatelbaum, Baltimore Md. and Robert B. Hirsch, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C. (Wexler, Weisman, Maurer & Forman, Philadelphia, Pa., on the brief), for Jerry and Anne Wolman.

Howard H. Conaway, Baltimore, Md., and Raymond Pearlstine, Wisler, Pearlstine, Talone & Gerber, Norristown, Pa. (Lawrence F. Rodowsky and Shale D. Stiller, Baltimore, Md., on the brief), for Leonard H. Tose.

THOMSEN, District Judge.

Jerry Wolman and Anne Wolman, the debtors in this Chapter XI Proceeding, seek review (1) of an order of the Referee dismissing their application (a) to vacate a prior order of the Referee approving a sale of the assets of the Philadelphia Eagles Football Club, Inc. (the Eagles) to Leonard H. Tose, or (b) to grant specific performance of an agreement between the Wolmans and Tose; and (2) of a preliminary order denying the Wolmans the right to take depositions until Tose's motion to dismiss their application was decided.

The following facts appear from the record of proceedings before the Referee.[1]

1. At the time this Chapter XI proceeding was filed, December 13, 1967, the Wolmans owned 52% of the stock of the Eagles. The rest of the stock was owned or represented by the Foreman family (the Foremans).

2. All or part of the Eagles stock was pledged to or otherwise subject to secured claims of two banks (Morgan and Fidelity) and one contractor (Blake), who had claims against the Wolmans, the Foremans and/or the Eagles.

3. On April 22, 1968, the Wolmans proposed a plan of arrangement, which was modified slightly by a plan proposed on May 6, 1968. Those plans contemplated the formation of a new corporation—Jerry Wolman Enterprises, Inc. (Enterprises)—and a public offering of its stock to the end that a new company become the beneficial owner of the Eagles.

4. On May 27, 1968, the Wolmans filed another modified plan of arrangement, which was approved by a majority of their unsecured creditors in accordance with 11 U.S.C. 762. The stock offering by Enterprises was still an integral part of this plan, but it differed from the prior plans in that Wolman would become the beneficial and legal owner of the Eagles stock, as a result of a series of transactions after the contemplated sale of the stock of the new corporation. The change was made to satisfy the National Football League (NFL). This plan was never confirmed by the Bankruptcy Court (Referee).

5. While the Registration Statement of Enterprises was being processed at the SEC, Morgan and Fidelity pressed their application filed with the Referee for leave to enforce their rights against the Eagles stock under their security agreements. The loss of this stock would have compelled the Wolmans to abandon the contemplated stock offering by Enterprises, and would have compelled abandonment of the then proposed plan of arrangement.

6. When it became evident that the Wolmans would not be able to obtain a long enough stay of the applications of Morgan and Fidelity to permit the stock offering, the Wolmans entered into a "Compromise Agreement" dated October 31, 1968, with Morgan, Fidelity, Blake, McCloskey (an unsecured creditor of the Eagles), and the Foremans. The Compromise Agreement provided that if the Wolmans and the Foremans were not able to produce by December 31, 1968, a buyer for the Eagles who would close the transaction by March 31, 1969, the other parties to the Compromise Agreement would then have the right to negotiate and execute a cash sale of the Eagles on behalf of the owners (the Wolmans and the Foremans). Any such sale would be submitted for approval first to the Referee, and, if so approved, to the NFL. The Compromise Agreement provided for the priorities which would govern the distribution of the proceeds of any sale, and further provided that any such sales agreement contain the following defeasance clause:

"This agreement shall be null and void if all secured claims of Morgan Guaranty Trust Company of New York, The Fidelity Bank, and Blake Construction Co., Inc. and the claim of McCloskey & Co., Inc. and any obligations due Earl and Phyllis Foreman under a certain agreement dated as of October 31, 1968 with Jerry and Anne Wolman have been unconditionally paid in full, in cash, on or before 3 P.M. Philadelphia time on March 31, 1969. Otherwise, this agreement shall remain operative and effective and the closing hereunder shall be held at 3:30 P.M. on March 31, 1969, or on the day immediately preceding the date of a hearing involving Debtors under Sec-

1. The application filed by the Wolmans does not state the background facts sufficiently to understand the bases of the decision of the Referee dismissing their application.

tion 376 of the Bankruptcy Act, or the day immediately preceding the date to which such a hearing is postponed or extended, without further action of any party hereto and without further action on the part of any Court. The terms 'paid in full' and 'claims' as used herein have the meanings given to them by a certain Compromise Agreement dated as of October 31, 1968, a copy of which is attached hereto."

7. On December 6, 1968, the Referee entered an order authorizing the execution of the Compromise Agreement, with the date by which the Wolmans and the Foremans were to produce a buyer extended to January 31, 1969, and the date on which the transaction would be closed and the defeasance clause would become inoperative extended to May 1, 1969.[2]

8. On January 28, 1969, the Wolmans filed a petition referring to certain delays in obtaining effective registration of the proposed public stock offering, which delays had added a material element of hazard to the Wolmans being able to comply with the time limitations in the Compromise Agreement. The petition continued:

"11. In order to avoid their Plan of Arrangement from being dismissed and to avoid further complication, the Debtors have interested Leonard H. Tose, an industrialist of large means and impeccable reputation to enter into an Agreement (The Tose Agreement) by which he will acquire the right, title and interest of Earl and Phyllis Foreman and others in the Wrap Up Agreement relative to the Eagles stock, and he will acquire the secured position and claims of all the other parties to the Compromise Agreement. Tose will advance the necessary funds which his written undertaking requires (herewith being submitted to the Bankruptcy Court as a sealed instrument for the purposes of information) to acquire the above interests in the Wrap Up Agreement before Noon on January 30, 1969, and upon approval of the court on this petition will acquire an assignment of the position of the secured and other parties to the Compromise Agreement and will do so on or before Noon, January 30, 1969. The Tose Agreement is also defeasible, in accordance with the terms of the Compromise Agreement which, except as to any conflict with the Tose Agreement, is to remain in full force and effect.

"12. The benefits which will accrue to the Debtors' estate from the Tose Agreement are these:

"(a) The date of default under the Compromise Agreement will be extended from May 1, 1969, to August 1, 1969, and will thus give the Debtors a reasonable margin of safety against delay in the effective registration of the public issue."

Then followed a recitation of other claimed benefits to the Debtors' estate.[3]

---

2. On October 31, 1968, the Wolmans, the Foremans and eight other parties, had executed a "Wrap-up Agreement", contingent upon the same time limitations as the Compromise Agreement (as modified), which provided for a step by step group of novations which would result in assets and liabilities passing serially between parties to the agreement, and eventually inuring to the benefit of the Debtors. That agreement was also approved by the Referee.

3. "13. Under the proposed Tose Agreement, all of the Debtors' interest in the stock of the Eagles and all of the Eagles' assets are, in effect, security for the ad-

vances the said Tose makes for the purpose of enabling the Debtors to implement the performance of their Plan of Arrangement. The Tose Agreement in essence, proposes that in case of a default, the assets of the Eagles shall be considered as having been sold to Tose, as though such assets had been liquidated in a commercially reasonable manner by a secured creditor entitled by law to do so.
" * * *

"15. Notice of this intended application has been given to the Creditors' Committee counsel who have agreed that its allowance would be for the best interest of unsecured creditors, and for the furtherance of the Plan of Arrangement."

9. A hearing on that petition was held on January 29, 1969. On January 30, 1969, an order was passed authorizing the Wolmans to borrow up to $15,-500,000 from Tose upon the security of their stock of the Eagles and the assets of that corporation. However, Tose was unable to consummate the necessary arrangements to make the proposed loan to the Wolmans.

10. The Wolmans then negotiated with Tose for the sale of the assets of the Eagles to him. The Eagles entered into an agreement of sale, signed by Jerry Wolman as its President, apparently backdated to January 16, 1969, providing for the sale of all assets of the Eagles to Tose for $15,600,000, less certain corporate liabilities assumed by Tose. That agreement was submitted to the Referee on January 31, 1969.

11. During their negotiations with Tose, the Wolmans were continuing their preparations for the public offering of the stock of Enterprises. On February 4, 1969, the Wolmans received a comment letter from the SEC. A preliminary prospectus for the new corporation was issued on February 14, and on March 20 the corporation issued its final prospectus and began selling its stock. The prospectus stated that the corporation was to be firmly bound to refund the entire purchase price paid by the public for the stock if gross proceeds of $36,750,000 were not obtained from the sale of such stock by May 1, or if all of the events of closing,[4] as defined, did not occur by May 1.

12. On February 4, the Wolmans filed an application praying that an order be passed approving and confirming the sale of the assets of the Eagles to Tose. The Referee passed an order on February 12, fixing March 11 as the date by which designated persons were required to show cause why the January 16 sales agreement, or such other or better proposal as might be offered pursuant to an invitation to bid, should not be approved and confirmed.

13. Prior to the hearing and auction on March 11, the Wolmans and Tose entered into an agreement dated March 11, which is the center of the present controversy. The pertinent provisions of that agreement were:

"WHEREAS, TOSE desires to aid the WOLMANS if they cannot, for any reason, obtain confirmation of their Plan of Arrangement on or before May 1, 1969, to extend the defeasance time described in the Referee's invitation to bid,

"NOW THEREFORE, in consideration of the above and other premises, each of the parties hereto intending to be legally bound hereby, it is AGREED that:

"(1) If TOSE becomes the successful bidder, and the WOLMANS are able to fund the Debtors' Plan of Arrangement, they shall have until 4:00 P.M., August 1, 1969 to make TOSE whole, and upon their doing so, the assets of the Philadelphia Eagles Football Club, Inc. shall revest in it." [5]

14. The Referee held an auction on March 11, and Tose prevailed with a bid in the amount of $16,055,000. Because this amount exceeded the price provided for in the agreement of sale dated January 16, a new contract was executed on March 18. Both of those agreements contained the defeasance clause provided for in the Compromise Agreement, as amended. See paragraphs 6 and 7 above. Following the defeasance clause was a provision stating:

"3(b) If the date of May 1, 1969 as set forth in said Compromise Agreement dated as of October 31, 1968, as

---

4. The events of closing included (i) confirmation of the plan of arrangement by the Court, (ii) the use of the proceeds of the offering to satisfy the entire indebtedness owed to Morgan, Fidelity and others who had secured claims, and (iii) the acquisition of the minority ownership interests in the Eagles.

5. Substantially the same statement was made before the Referee at the hearing and auction on March 11 by Tose's attorney.

amended, referred to in Paragraph 3(a) of this Agreement, is extended to some later date by agreement of the parties to said Compromise Agreement dated as of October 31, 1968, and approved by the Court as defined in said Agreement, the date of May 1, 1969 as set forth in Paragraph 3(a) of this Agreement, shall be automatically and identically extended."

15. On March 19 the Referee passed an order approving the sale subject to certain conditions, which were in fact complied with by the sales agreement dated March 18.

16. On March 26 the Referee entered an order approving the agreement of sale dated March 18, between the Eagles and Tose, providing for the sale of all assets of the Eagles to Tose. Included in the Referee's order was the following statement:

"FURTHER ORDERED that this court retains jurisdiction over the parties to this agreement of sale and to the compromise agreement of October 31, 1968 for the purpose of determining any controversy which may arise thereunder.

"FURTHER ORDERED that this court retains jurisdiction over Leonard H. Tose for the purpose of enforcing an agreement whereby Jerry Wolman and Anne Wolman are accorded the right to repurchase the assets of The Philadelphia Eagles Football Club, Inc., on or before August 1, 1969."

17. Enterprises was unable to raise $36,750,000 by May 1 through the sale of its stock, and its proposed loan to Wolman could not be consummated. Consequently, Wolman was unable to exercise the defeasance clause in the agreement of sale dated March 18. See paragraphs 6, 7 and 14. So, on May 1 there was a settlement pursuant to that agreement, and the Eagles' assets were conveyed to Tose.

18. Because of the failure of the stock offering of Enterprises, the Wolmans were unable to fund their then pending plan of arrangement. On May 28 the Wolmans filed another modified plan of arrangement, which was approved by a majority of their unsecured creditors on June 18. This plan of arrangement eliminated all provisions relating to Enterprises. The only immediate cash deposit called for was $500,000, later reduced to $300,000, which was required under § 377 of the Bankruptcy Act, 11 U.S.C. § 737(2), to cover the costs of administration and the priority debts allowed by the court. That deposit was made on or before July 15, when the Wolmans filed an application for confirmation of the new modified plan of arrangement. That plan, which is still in effect, requires funding by the payment of $300,000 annually for a period of ten years. Only the first $300,000 annual instalment has been paid in, so the plan has not yet been fully funded.

19. On June 6 the Wolmans' attorney mailed to Tose's attorney a letter reading as follows:

"The Wolmans are ready to proceed with their plan of arrangement and in this connection to recover the assets of the above club. Will you please obtain a statement from Leonard Tose showing the amount necessary to make him whole, as contemplated by the writing of March 10, 1969.[6] Will you ask Mr. Tose to make the statement detailed. We assume it will take only a few days to obtain this data, and that we will have it before a scheduled meeting on the 18th."

20. On June 13 Tose's attorney rejected Wolmans' request in a letter reading as follows:

"I acknowledge receipt of your letter of June 6, 1969. The agreement of March 10, 1969 explicitly required the funding of the debtors' plan of arrangement in existence as of that date. That plan of arrangement pro-

6. Evidently the March 11 agreement set out in paragraph 13, one copy of which was dated March 10.

vided that the funding arise from the proceeds of the sale of an offering of securities by Jerry Wolman Enterprises, Inc.

"The debtors' plan of arrangement as filed on May 28, 1969 proposes a new method of funding that does not meet the conditions of the March 10, 1969 agreement. I have therefore advised Mr. Tose that he is under no obligation to comply with your letter request until we have been assured that all of the conditions of the agreement of March 10, 1969 have been met."

21. On July 9, 1969, the Wolmans filed with the Referee an application seeking (a) an order vacating the orders of March 19 and March 26, 1969, approving the sale of the assets of the Eagles to Tose; and/or (b) that "upon payment of the net amount necessary to do equity between Tose and the debtors, Tose be ordered to turn over all of the assets of the Eagles which he received on May 1, 1969, save those diminished or used up in the normal operation of the Eagles", and associated relief. The Wolmans apparently intended the quoted prayer for relief to mean that the Court order specific performance of the agreement of March 11 between Tose and the Wolmans. To whom Tose was supposed to turn over the assets is not clear; the agreement of March 11 (see paragraph 13 above) evidently contemplated that the assets would "revest" in the Eagles; the letter of June 6 (see paragraph 19) indicates that the Wolmans wish to "recover the assets of the above club". What effect this would have on the modified plan of arrangement which was approved by the creditors on June 18, 1969, and later confirmed by the Referee is not stated in the Wolmans' application nor in the briefs filed by their attorneys. Nor is there any mention of the rights of other stockholders of the Eagles before the settlement of May 1, or of the rights of any other person, firm or corporation which may have acquired an interest in the assets of the football club between May 1, 1969, and the filing of the Wolmans' application.

22. The application filed by the Wolmans includes: (a) a partial statement of the facts set out above in this opinion; (b) an allegation that: "To induce the debtors to cause the Eagles to enter into a purchase agreement with him, and thus give him what he correctly foresaw would be a favored status over other possible buyers, Tose represented to the debtors, inter alia, that if they did so, and if he became the purchaser, the debtors would have the right, up to and including August 1, 1969, within which to reacquire the Eagles from him, and further, that he would waive the claim the Eagles had filed in the instant proceedings"; (c) an allegation that: "On March 11, 1969, immediately prior to the scheduled Court hearing, Tose handed the debtors a signed document of confirmation, a true and correct copy of which is hereto attached as Exhibit 'A', and the debtors executed the same" (see paragraph 13, above); (d) an allegation that by his letter of June 13, 1969 (see paragraph 20 above), Tose repudiated that obligation; and (e) allegations that after Tose acquired the Eagles on May 1, 1969, he repeatedly made statements indicating that he had no obligation under the March 11, 1969 agreement after May 1, 1969, and that these statements evidence Tose's deceit and bad faith towards the Referee in representing to the Referee that, upon his approval of the agreement of sale of the Eagles' assets, Tose would give the debtors an extension to August 1, 1969.

23. On August 20, 1969, Tose filed a motion to dismiss the debtors' application on the grounds that the court lacked jurisdiction to determine the matters presented by the application, that the application failed to state a claim upon which relief could be granted, and that the application was defective in failing to set forth various matters essential to the relief prayed.

24. On September 11, 1969, a hearing on this motion was held before the Referee.

25. Meanwhile, on July 15, 1969, the Wolmans had served on Tose a notice to

take certain depositions. The taking of those depositions was postponed, but later the Wolmans served another notice to take depositions. On October 1, 1969, Tose and two other persons who had been served moved to stay all depositions pending determination of the motion to dismiss. After a hearing, the Referee so ordered on October 9, 1969. No appeal was taken from that order until April 27, 1970.

26. On March 30, 1970, the Referee entered an order granting the motion to dismiss filed by Tose, dismissing the Wolmans' application and dissolving the temporary restraining order passed in connection therewith. The findings and conclusions of the Referee were as follows:

> "(a) That under the terms the agreement dated March 11, 1969, by and between Jerry Wolman and Anne Wolman and Leonard H. Tose, which is attached as Exhibit A to the debtors' Application, the right of Jerry Wolman and Anne Wolman to acquire the assets of Philadelphia Eagles Football Club, Inc. was conditioned upon their being able to fund the Plan of Arrangement then before this Court for consideration, which Plan of Arrangement provided for the debtors to acquire funds through the sale of common stock of Jerry Wolman Enterprises, Inc.

> "(b) That the Application fails to state facts upon which an order vacating the sale of the assets of Philadelphia Eagles Football Club, Inc. to Leonard H. Tose could be based.

> "(c) That the Application fails to state facts upon which an order permitting Jerry Wolman and Anne Wolman to acquire the assets of Philadelphia Eagles Football Club, Inc. from Leonard H. Tose could be based."

27. On April 27, 1970, the Wolmans filed their petition for review of the Referee's orders, having obtained an extension of the ten day limit earlier that month.

## I. Revocation of Order Approving Sale

■ At first Tose contested the jurisdiction of the bankruptcy court to consider the issues raised by the Wolmans' application. Later, in December 1970, the parties agreed not to challenge the jurisdiction of this Court. Nevertheless, a federal court must always consider the question of its jurisdiction.

■ The basic order of the Referee approving the sale of the assets of the Eagles to Tose was an unusual order in a bankruptcy proceeding in that the sale under consideration was a sale by the Eagles to Tose, and not a sale by the Debtors to Tose. The Referee was asked to approve it because it affected the Debtors' estate in various ways. In effect, the Referee was deciding whether to allow the Wolmans to vote their stock in the Eagles in favor of the sale; that stock was an asset of the Debtors' estate. The referee had jurisdiction to enter the order approving the sale, 11 U.S.C.A. 711, 713, and likewise had jurisdiction to consider whether he should revoke his order, provided all parties who would be affected by any such revocation were properly before the court. The Wolmans' application did not consider this factor, and did not offer to pay into court or otherwise tender any sum of money to Tose or to anyone else.

Moreover, the Wolmans' application did not state facts which would justify setting aside the order of the Referee approving the sale by the Eagles to Tose. The allegations as to statements made by Tose after the sale had been consummated by the transfer of the assets to Tose and the payment by him of the substantial purchase price do not support the claim that Tose was guilty of any deceit which would justify setting aside the order approving the sale by the Eagles to Tose. His statements were consistent with the position he has taken all along—that he had a valid and binding contract with the Eagles, which he had fully performed.

## II. *Specific Performance of March 11 Contract*

The jurisdiction of the Referee to grant what is in effect specific performance of the agreement of March 11, 1969, between the Wolmans and Tose presents a different problem. Ordinarily such a case would be heard in a court of general jurisdiction. In this case, however, the Referee had included in his order approving the sale, a provision retaining jurisdiction for the purpose of enforcing the March 11 agreement. See paragraph 16, above.

■ Under the unusual circumstances of this case, the Court has concluded that it should not *sua sponte* decide the close jurisdictional question by denying jurisdiction.

The Referee denied the request by the Wolmans that "upon payment of the net amount necessary to do equity between Tose and the debtors, Tose be ordered to turn over all of the assets of the Eagles which he received on May 1, 1969, save those diminished or used up in the normal operation of the Eagles".[7]

The Referee stated the grounds for his denial as follows:

"That under the terms the agreement dated March 11, 1969, by and between Jerry Wolman and Anne Wolman and Leonard H. Tose, which is attached as Exhibit A to the debtors' Application, the right of Jerry Wolman and Anne Wolman to acquire the assets of Philadelphia Eagles Football Club, Inc. was conditioned upon their being able to fund the Plan of Arrangement then before this Court for consideration, which Plan of Arrangement provided for the debtors to acquire funds through the sale of common stock of Jerry Wolman Enterprises, Inc."

■ The Referee's construction of the contract of March 11, 1969, was correct. The essential provision of that contract read:

"If Tose becomes the successful bidder, and the Wolmans are able to fund the Debtors' Plan of Arrangement, they shall have until 4:00 P.M., August 1, 1969 to make Tose whole, and upon their doing so, the assets of the Philadelphia Eagles Football Club, Inc. shall revest in it."

At the time that agreement was made, the Debtors' plan of arrangement called for the raising of some $30,000,000 through the sale of stock of Enterprises. The public sale of such stock was imminent, but it would obviously take some time to make available to the Wolmans the money which they were to receive from Enterprises as a loan if the sale were successful. The agreement of March 11 (see paragraph 13, above) extended to August 1 the time within which the Wolmans could fund the then existing plan of arrangement, make Tose whole and bring into play Tose's obligation to reconvey the assets of the Eagles. The failure of the stock offering made it impossible for the Wolmans to proceed under the then existing plan of arrangement; a different plan was therefore proposed, approved and eventually confirmed.

The agreement of March 11, referred to "their Plan of Arrangement" in the "Whereas" clause, and conditioned any obligation of Tose thereunder to the Wolmans "being able to fund the Debtors' Plan of Arrangement". The plan referred to was the then existing plan, based upon the sale of stock of Enterprises; that is how the plan was to be funded. The purpose of the extension was to protect against delay in the registration and sale of the stock.

Even if it should be held that the agreement of March 11 referred not to the existing plan of arrangement, but to any plan which might be proposed, it still required that the Wolmans fund the plan. The Wolmans proposed their new

---

7. The uncertainty as to how this would be accomplished is discussed in paragraph 21, above, and in the discussion of the prayer to set aside the sale. See I, above.

plan on May 28, 1969, nearly a month after the settlement between the Eagles and Tose; the new plan was approved by a majority of the unsecured creditors on June 18, 1969, but was not confirmed by the Referee until May 19, 1970. No money to fund the plan was put up by the Wolmans before August 1, 1969. Only one of ten $300,000 annual instalments has yet been paid. See paragraph 18, above.

■ The other allegations of the complaint do not show any ground for specific performance of the March 11 agreement. Fraud is not a ground for specific performance.

■ Counsel for the Wolmans questioned the right of the Referee to consider the prior proceedings in the case when passing on the motion to dismiss. The Referee had the right and the duty to consider the application in the light of the prior proceedings, not *in vacuo*.

Under the circumstances set out above, the Referee did not err in refusing to permit depositions until he ruled on the motion to dismiss.

The action of the Referee in dismissing the application of the Wolmans is affirmed.