James **YACOVELLI**, Terry **Moffitt**, John Doe No. 1, John Doe No. 2, a minor, by and through his parents, John and Jane Doe, Sr., as next friends, and Jane Roe, Plaintiffs,

v.

James **MOESER**, individually and in his official capacity as Chancellor of the University of North Carolina at Chapel Hill, and Cynthia Wolf Johnson, in her official capacity as Associate Vice Chancellor for Student Learning for the University of North Carolina at Chapel Hill, Defendants.

No. 1:02CV596.

United States District Court, M.D. North Carolina.

July 7, 2004.

James Flynn Walker, Daniel S. Bullard, Walker & Bullard, Gibsonville, NC, Stephen M. Crampton, Michael J. Deprimo, Brian Fahling, Bryan J. Brown, American Family Assoc. Center For Law & Policy, Tupelo, MS, for Plaintiffs.

Joyce S. Rutledge, N. C. Department of Justice, Raleigh, NC, Sylvia Hargett Thibaut, UNC Hospitals, Celia Grasty Lata, Special Deputy Attorney General Legal Depart., Chapel Hill, NC, for Defendants.

## MEMORANDUM OPINION

TILLEY, Chief Judge.

The parties in this matter continue to dispute the constitutionality of a freshman orientation program, instituted by the University of North Carolina at Chapel Hill, involving the study of a book about the Qur'an. The matter is currently before the Court on Defendants' Motion to Dismiss the Free Exercise Claim in the Second Amended Complaint [Doc. # 59]. For the reasons set forth below, Defendants' Motion will be GRANTED and, therefore, the sole remaining claim in this dispute will be DISMISSED.

## I.

The facts of this case have been discussed in detail in a Memorandum Opinion issued by this Court on May 20, 2004. However, a brief summary of the facts as set forth in the Second Amended Complaint is as follows: The University of North Carolina at Chapel Hill ("UNC") conducts an orientation program for all incoming freshmen prior to the beginning of classes. The stated goals of the orientation program are to: (1) stimulate discussion and critical thinking around a current topic, (2) introduce the student to academic life at UNC, (3) enhance a sense of community between students, faculty and staff, and (4) provide a common experience for incoming students.[1] For the 2002 orientation program, UNC selected portions of Michael Sells' *Approaching the Qur'an: The Early Revelations* (White Cloud Press 1999), stating that a book exploring Islam was highly relevant in light of the terrorist attacks of September 11, 2001.

Two parts of the book were designated:[2] the introduction and an analysis of pas-

---

1. These goals were listed on UNC's website along with details about the assignment. Plaintiffs specifically referenced UNC's web page in their Second Amended Complaint and attached a print out of the web page as Exhibit 4. Documents that are "integral to and explicitly relied on in the complaint" may be considered in a 12(b)(6) motion if their authenticity is not in question. *Phillips v. LCI Intern., Inc.,* 190 F.3d 609, 618 (4th Cir.1999).

2. Because the book is integral to and relied on in the Complaint, and neither party dis-

sages from the Qur'an. Sells states that "[t]he purpose of th[e] introduction is to clarify the cultural and historical matrix in which the Qur'an came to exist, the central themes and qualities of hymnic Suras,[3] and the manner in which the Qur'an is experienced and taken to heart within Islamic societies." *Id.* at 4. The second designation includes a translation of several Suras and accompanying commentary.[4] This portion of the book is dedicated to "issues of interpretation, historical context, and key themes" of Islam as expressed in the early Suras. *Id.* at 21.

UNC originally required all incoming students to read the book and write a paper in response to the book, guided by a series of questions prepared by UNC. UNC later stated that students with religious objections did not have to read the book, and that they could instead write a paper addressing why they chose not to read the book. The student papers, while not graded,[5] were collected. Despite representations by UNC officials[6] that attendance would not be taken at the discussion groups, Plaintiff Jane Roe alleges that her discussion facilitator took attendance.

Plaintiffs filed the instant lawsuit contending that UNC violated the federal Constitution by assigning a book with a positive portrayal of both Muhammad and Islam and by forcing students to read and discuss the book. Further, Plaintiffs allege that forcing students to write about and share their personal religious beliefs subjected them to harassment and ridicule.

A preliminary injunction was denied both by this Court and by the Fourth Circuit, and the orientation program took place as scheduled. Thereafter, this Court dismissed the Taxpayer Plaintiffs for lack of standing, dismissed any further claims for injunctive relief as moot, and dismissed any claims that the Defendants violated the Establishment Clause. Plaintiffs were permitted to add new factual allegations as they related to the sole remaining claim, the Free Exercise Claim. The Defendants have now moved to dismiss the Free Exercise claim.

## II.

A Rule 12(b)(6) motion should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiffs cannot prove any set of facts in support of their claims that entitle them to relief, *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999), and that they are not entitled to relief under any legal theory that might plausibly be suggested by the facts alleged, *Mylan Labs. Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). The Fourth Circuit has stated that "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present." *Wolman v. Tose*, 467 F.2d 29, 33 n. 5 (4th Cir.1972). It is the Plaintiffs' burden "to set forth facts sufficient to allege each element of [their] claim." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir.2002).

putes its authenticity, the Court will consider it without converting the motion into one for summary judgment. *Phillips,* 190 F.3d at 618 (4th Cir.1999).

**3.** Suras are "hymnic chapters." Sells, *supra,* at 3.

**4.** Sound recordings of the Suras being recited are included in a compact disk attached to the book because the rhythmic patterns of the Arabic language are "central to the Qur'an." Sells, *supra,* at 22.

**5.** *See* Second Am. Compl. Ex. 4 at 2.

**6.** *See e.g.,* Aff. Provost Shelton ¶ 15.

## III.

Plaintiffs contend that UNC violated the Free Exercise Clause by "authorizing and requiring the reading and discussing of *Approaching the Qur'an.*" (Second Am. Compl. ¶ 93.) However, because the Plaintiffs have failed to allege that UNC impaired their ability to practice or profess their religious beliefs, the Defendants' Motion to Dismiss will be GRANTED.

The Free Exercise Clause, made applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law ... prohibiting the free exercise" of religion. U.S. Const. amend. I. According to the Supreme Court, "the free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Employment Div., Dept. of Human Res. of Or. v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). The government may not "compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma." *Id.* (internal citations omitted).

Laws designed to suppress religious beliefs or practices may not be adopted "unless justified by a compelling governmental interest and narrowly tailored to meet that interest." *Booth v. Maryland,* 327 F.3d 377, 380 (4th Cir.2003) (citations omitted). However, where the contested government action is a neutral, generally applicable law, the government need not establish a compelling governmental interest "even if the law has the incidental effect of burdening a particular religious practice." *Booth,* 327 F.3d at 380 (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993)). Put simply, a law that is neutral and of general applicability "does not offend the Free Exercise Clause, despite any incidental religious burdens it may create." *Am. Life League, Inc. v. Reno,* 47 F.3d 642, 654 (4th Cir.1995).

### A.

The Plaintiffs' Second Amended Complaint does not allege facts sufficient to state a claim for a Free Exercise Clause violation. Accepting all of the Plaintiffs' allegations as true, UNC required students who did not want to read the assigned book to write a paper explaining why they chose not to read the book, and to attend a related discussion group with other students who may or may not have read the book. At the discussion group, students were asked to turn in their papers and to answer any questions, either about the book or about their decision not to read the book, that the facilitator may direct at them.

This Court has already found that the book in question was not a religious reading, but part of an academic exercise. *See Yacovelli v. Moeser,* 2004 WL 1144183 (M.D.N.C. May 20, 2004). Nonetheless, UNC allowed anyone who objected to reading the book to refrain from doing so. Therefore, the Plaintiffs' only remaining factual allegations are that writing about their reasons for not reading the book and/or attending a two-hour discussion group interfered with the exercise of their religious beliefs.

The facts as set out in the Second Amended Complaint are insufficient to state a claim for a Free Exercise Clause violation. The Complaint does not allege a factual basis for the conclusion that UNC either (1) compelled affirmation of any particular religious belief, (2) lent its power to a particular side in a controversy over religious dogma, (3) imposed special disabilities on the basis of religious views or religious status, or (4) punished the ex-

pression of any particular religious doctrines.

There is not a sufficient factual or legal basis for the conclusion that UNC either compelled affirmation of Islam, or lent its power in favor of Islamic dogma. This Court's prior Memorandum Opinion in this matter examined the reading assignment and found that UNC's assignment was academic, and not religious, in nature. UNC, instead of endorsing a particular religious viewpoint, merely undertook to engage students in a scholarly debate about a religious topic. The discussion groups that followed the reading assignment were likewise intended to encourage scholarly debate about the Islamic religion. Students were free to share their opinions on the topic whether their opinions be positive, negative or neutral.

Further, UNC has neither imposed disabilities on students nor punished student expression on the basis of religious belief or doctrine. To the contrary, UNC permitted an exception for students who objected to reading the book on religious grounds. While a writing sample was still required of students opting out of the reading, these students were free to explain their reasons for not reading the book in any manner they chose, including by expressing their own religious views. Allowing students to express their own religious views, or to choose not to do so, did not punish student expression of religious beliefs. Instead, this type of assignment specifically encouraged students to address any and all views they may have had on either the Qu'ran or on the Islamic faith. Furthermore, the Plaintiffs did not allege that students received a grade on their written assignments or were otherwise punished for failing to submit a written response.

Likewise, the fact that UNC required all freshmen to attend a group discussion on topics relating to the Islamic religion and traditions did not penalize any particular group or groups of freshmen on the basis of their religion. Instead, UNC encouraged contribution from students of all backgrounds to an academic discussion on a controversial subject. Plaintiffs have not provided any factual allegations which would support a finding that they have been burdened in their religious beliefs or practices by any of UNC's actions.

UNC implemented a freshman orientation program which did not infringe upon the rights of its students under the Free Exercise Clause. The Second Amended Complaint fails to provide sufficient allegations to show that UNC compelled students to perform acts which burdened their religious beliefs, or otherwise punished students on the basis of their religion. To the contrary, UNC implemented a program asking students to discuss a religion thrust into recent controversy, and to do so from an academic perspective. Part of the purpose of this program was to introduce students to the type of higher-level thinking that is required in a university setting. Students who were not members of the Islamic faith, probably the great majority of students, were neither asked nor forced to give up their own beliefs or to compromise their own beliefs in order to discuss the patterns, language, history, and cultural significance of the Qu'ran.

### B.

Defendants also have argued that they are entitled to qualified immunity as to the Plaintiffs' claims for nominal damages. A claim can be dismissed on qualified immunity grounds if the allegations of a complaint against a public official fail to state a violation of a clearly-established right. *Korb v. Lehman*, 919 F.2d 243, 246–47 (4th Cir.1990). Courts evaluate qualified immunity claims by first determining wheth-

er the plaintiffs' allegations, if true, establish the deprivation of a constitutional right. *Mellen v. Bunting*, 327 F.3d 355, 365 (4th Cir.2003). Only if a deprivation has been alleged need the Court address whether that violated right was a clearly established right of which a reasonable person would have known. *Id.* Because, as previously discussed, no constitutional deprivation has been alleged, the Court need not address whether Defendants are entitled to qualified immunity.

## IV.

Because the Plaintiffs have not alleged a violation of the Free Exercise Clause, Defendants' Motion to Dismiss the Free Exercise Claim will be GRANTED. Now that all claims against the Defendants in this case have been dismissed, the case will be DISMISSED in its entirety.

## JUDGMENT

For the reasons set forth in a contemporaneously filed Memorandum Opinion, Defendants' Motion to Dismiss the Free Exercise Claim [Doc. # 59] is GRANTED. As there are no remaining claims in this dispute, the case is DISMISSED in its entirety.