**SIMMS INVESTMENT COMPANY, a North Carolina Corporation, Plaintiff,**

v.

**E.F. HUTTON & COMPANY INC., A Delaware Corporation, and A.L. & E. Operating Company, an Oklahoma Corporation, Defendants.**

**Civ. A. No. C-87-643-WS.**

United States District Court, M.D. North Carolina, Winston-Salem Division.

June 9, 1988.

Wesley Bailey, Winston–Salem, N.C., and Martin T. Fletcher, Sr., Fort Wayne, Ind., for plaintiff.

William K. Davis and D. Anderson Carmen, Winston–Salem, N.C., and Daniel T. Flaherty, Washington, D.C., for defendant E.F. Hutton & Co.

Daniel R. Taylor, Jr., Winston–Salem, N.C., and Jennifer A. Ostrom, Denver, Colo., for defendant A.L. & E. Operating Co.

## MEMORANDUM OPINION

GORDON, Senior District Judge:

This matter comes before the court pursuant to defendant E.F. Hutton & Company Incorporated's ("Hutton") and defendant A.L. & E. Operating Company's ("AL & E") motions to dismiss plaintiff Simms Investment Company's ("Simms") claim under Colorado securities law. Inasmuch as the applicable choice of law rules indicate that the court should apply North Carolina law, the court dismisses plaintiff's claim under Colorado law. The court will, however, allow plaintiff the option of amending

the complaint to include any relevant causes of action under North Carolina securities laws.

## I.

In April of 1983, Simms and AL & E agreed to enter into a joint venture. Pursuant to this agreement, AL & E/Simms 1983 Joint Venture ("AL & E/Simms 1983") was formed. Hutton acted as the sales agent between AL & E and Simms in the formation of AL & E/Simms 1983. AL & E/Simms 1983 is a Colorado partnership formed for the ostensible purposes of hunting, producing, and marketing oil and gas.

Plaintiff filed suit in September of 1987, alleging that defendants made misrepresentations and omissions of fact in order to induce plaintiff to participate in AL & E/Simms 1983. These misrepresentations and omissions, plaintiff contends, amount to a violation of (1) Section 10(b) of the Securities Exchange Act of 1934, (2) the Colorado Securities Act of 1981, and (3) the North Carolina common law prohibition of fraud. In particular, plaintiff alleges that defendants' conduct violated sections 11–51–123 and 11–51–125 of the Colorado Securities Act of 1981.

## II.

Defendants first argue that dismissal of plaintiff's claims under Colorado law is proper, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, because the questioned transaction did not amount to the offer and sale of a security within the Colorado Securities Act. Section 11–51–127 of the Colorado Securities Act of 1981 provides:

Scope of article and service of process.
(1) Sections ... 11–51–123 and 11–51–125 apply to persons who sell or offer to sell when an offer to sell is made in this state, or when an offer to buy is made and accepted in this state.

Stated differently, sections 11–51–123 and 11–51–125 only apply to persons who (1) sell or offer to sell where the offer to sell is made in Colorado or (2) sell where the offer to buy is both made and accepted in Colorado. Defendants argue that plaintiff's alle-

gations clearly indicate that any offers to buy or sell occurred in North Carolina, and, therefore, plaintiff's claims fail to satisfy the tests stated in section 11–51–127.

In evaluating defendants' motion to dismiss, the court must presume that all factual allegations in the complaint are true. The complaint must be liberally construed in favor of the claimant, and all reasonable inferences resolved in support of the complaint. *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Gilbert v. Bagley*, 492 F.Supp. 714, 727 (M.D.N.C.1980); 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.07[2.–5] (1986). The court should not dismiss plaintiff's claims unless it appears beyond doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). *Accord Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060 (4th Cir. 1984); *Wolman v. Tose*, 467 F.2d 29, 35 (4th Cir.1972); *Thompson v. Brotherhood of Sleeping Car Porters*, 316 F.2d 191 (4th Cir.1963).

Plaintiff alleges, in paragraph 58 of the complaint, that "[t]he transaction which is the subject of this action constituted the offer and sale of a security in Colorado by [defendants] ... to the Plaintiff." Plaintiff further alleges, in paragraph 56 of the complaint, that the Joint Venture Agreement between Simms and A.L. & E. was executed and delivered in Colorado. If the court presumes these allegations are true and makes all reasonable inferences in favor of plaintiff, dismissal of plaintiff's claim under Colorado law would be improper. Plaintiff clearly alleges that the offer and the sale of the security occurred in Colorado, and the allegation that Simms and A.L. & E. "executed" the Joint Venture Agreement in Colorado suggests that the offer, acceptance, or both offer and acceptance occurred in Colorado. It does not appear "beyond doubt," from the face of the complaint, that plaintiff will be un-

able to prove the elements of section 11–51–127.

## III.

Pursuant to the court's request, the parties briefed the issue of whether the court may apply Colorado law under traditional choice of law principles. In response to this request, plaintiff submitted a brief suggesting that this case does not present a choice of law problem. Instead, plaintiff suggests that the only issue is whether a sufficient nexus exists between the transaction and Colorado so that the transaction falls within the reach of the Colorado Securities Act. Plaintiff further argues that if a sufficient nexus exists between the transaction and the laws of more than one state, then the court can apply the laws of more than one state.

Plaintiff's position appears to confuse constitutional considerations under the due process clause with choice of law considerations. Under basic notions of due process, the Supreme Court has long recognized "that a set of facts giving rise to a lawsuit, or a particular issue within a lawsuit, may justify, in constitutional terms, application of the law of more than one jurisdiction." *Allstate Insurance Co. v. Hague*, 449 U.S. 302, 307, 101 S.Ct. 633, 637, 66 L.Ed.2d 521 (1981). A court may apply a state's substantive law to a cause of action if that state has "a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818, 105 S.Ct. 2965, 2978, 86 L.Ed.2d 628 (1985) (citing *Hague*, 449 U.S. at 312–13, 101 S.Ct. at 639–40). Plaintiff argues that there are sufficient contacts with Colorado in this case, and, therefore, the court should apply Colorado law.

Plaintiff's argument fails to recognize that a court does not apply the law of any or every state that has a sufficient constitutional "nexus" between the questioned transaction, the parties, and the state; nor does a court apply every state statute that, according to its statutory language, might govern a particular transaction. Funda-mental choice of law notions, long recognized by every court, dictate that if a court can apply state laws that substantively conflict, the court selects "one law from among the laws of several jurisdictions having some contact with the controversy." *Hague*, 449 U.S. at 308, 101 S.Ct. at 637.

Plaintiff cites *Lintz v. Carey Manor Ltd.*, 613 F.Supp. 543 (W.D.Va.1985), for the proposition that when two or more state blue sky statutes might apply to a transaction, no conflict of laws problem exists, and the court should simultaneously apply all of the potentially applicable statutes. For the reasons articulated above, the court rejects this proposition. Additionally, the court notes that the only supporting authority cited in *Lintz* fails to support the conclusion reached in the case. The court, in *Lintz*, noted that "[t]he only discussion I have located on the question of whether two or more state statutes can simultaneously provide civil liability for securities fraud ... is by Professor Joseph C. Long." 613 F.Supp. at 548. Later, in summarizing Long's views, the court states that Long never confronts the question of "whether conflicts of law principles should be applied" to a situation where a securities transaction is legal under one state's law and illegal under a second state's law. 613 F.Supp. at 550. The footnote to this statement, however, quotes Long, and Long writes that "[w]hen a transaction is determined to involve two or more states, it is possible that the transaction may be legal under one statute, but illegal under the statute of the second state. In such case *a conflicts question arises as to which law should control.*" 613 F.Supp. at 550 n. 9 (emphasis supplied).

Accordingly, the court will apply a conflict of laws analysis to the facts of this case to determine what law applies to plaintiff's state law claim under Count II of the complaint.

## IV.

The Rules of Decision Act, 28 U.S.C. § 1652 (1966), and the rule of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), require a federal court

sitting in a diversity case to apply the forum state's substantive law and federal procedural law. An adjunct of this rule mandates that a federal court apply the choice of law rules of the state where the federal court sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). These same principles apply "where a federal court addresses state law claims under its pendent jurisdiction." *Compliance Marine, Inc. v. Campbell*, 839 F.2d 203, 205 (4th Cir.1988). *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Bi-Rite Enterprises, Inc. v. Bruce Miner Co., Inc.*, 757 F.2d 440, 442 (1st Cir.1985); *Colgate Palmolive Co. v. S/S Dart Canada*, 724 F.2d 313, 316 (2d Cir.1983), *cert. denied*, 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984); *System Operations, Inc. v. Scientific Games Development Corp.*, 555 F.2d 1131, 1136 (3d Cir.1977); 13B C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3567.1 (1984). Accordingly, this court must apply North Carolina law to the substantive issues this action presents unless the North Carolina choice of law rules indicate that application of another state's law is appropriate.

"In a conflict of laws situation, a court must determine at the outset whether the problem presented to it for resolution relates to torts, contracts, property, or some other field, or to a matter of substance or procedure, in order to refer to the appropriate law." 16 AmJur2d *Conflict of Laws* § 3 (1979). This process of "characterization" is essential because North Carolina, like many states, applies different choice of laws rules to the different areas of the law.

■ Plaintiff argues that its claim "is essentially one to rescind a contract." If plaintiff's claim is most closely akin to a contract claim, North Carolina generally applies the law of the place where the contract was made. *Fried v. North River Insurance Co.*, 710 F.2d 1022, 1024 (4th Cir.1983); *Tanglewood Land Co., Inc. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655,

656 (1980). *See Clarkson v. Finance Company of America*, 328 F.2d 404, 407 (4th Cir.1964) (contract "made" where last act necessary to contract's validity occurred). Plaintiff alleges that the Joint Venture Agreement in this case was "made" in Colorado. Plaintiff further notes that where the parties to a contract agree "that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." *Tanglewood*, 299 N.C. at 262, 261 S.E.2d at 656. *Accord* N.C.G.S. § 25-1-105(1); *Sterling Forest Associates, Ltd. v. Barnett-Range Corp.*, 840 F.2d 249 (4th Cir.1988); *Kaplan v. RCA Corp.*, 783 F.2d 463, 465 (4th Cir.1986); *Boone v. Aeronca, Inc.*, 669 F.Supp. 1353, 1359 (W.D.N. C.1987). *See generally*, Annotation, *Validity and Effect of Stipulation In Contract To Effect That It Shall Be Governed By Law Of Particular State Which Is Neither Place Where Contract Is Made Nor Place Where It Is To Be Performed*, 16 A.L.R. 4th 967 (1982 and Supp.1987). The Joint Venture Agreement states that "[t]his Agreement ... shall be governed, construed and interpreted according to the laws of [Colorado]," and plaintiff argues that this "choice of law provision" makes Colorado law applicable.

Defendants argue that plaintiff's allegations are most nearly analogous to a tort claim. Defendants characterize plaintiff's claim as a claim for fraud and note that a fraud claim is essentially a tort claim. Under traditional choice of law rules, the law of the place of the tort determines a plaintiff's right to recover in an action for fraud or deceit. 16 Am.Jur.2d *Conflict of Laws* § 108 (1979 and Supp.1987). Under the traditional North Carolina rule, a tort occurs at the place where the last event takes place that is necessary to render the actor liable. Since injury is the last element of a tort, the traditional North Carolina rule applies the law of the place of injury. *ITCO Corp. v. Michelin Tire Corp., Commercial Division*, 722 F.2d 42, 49–50 n. 11 (4th Cir.1983), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985); *Santana, Inc. v. Levi Strauss and Co.*, 674 F.2d 269, 272 (4th Cir.1982); *Geiger v.*

*Guilford College Community Volunteer Firemen's Ass'n, Inc.,* 668 F.Supp. 492 (M.D.N.C.1987); *Smith v. Cessna Aircraft Co., Inc.,* 571 F.Supp. 433, 435 (M.D.N.C. 1983). Some recent cases, however, suggest that the North Carolina courts might apply the law of the jurisdiction having the "most significant relationship" to the occurrence giving rise to the claim. *See Andrew Jackson Sales v. Bi–Lo Stores, Inc.,* 68 N.C.App. 222, 314 S.E.2d 797 (1984) (case under North Carolina unfair trade practices act); *Santana,* 674 F.2d at 272–73 (same).

■ Defendants further argue that the choice of law provision in the Joint Venture Agreement does not apply since this action is for fraud. Defendants correctly note that choice of law provisions only apply to actions involving the construction, interpretation, or enforceability of the contract containing the choice of law provision. *Glaesner v. Beck/Arnley Corp.,* 790 F.2d 384, 386 n. 1 (4th Cir.1986); *ITCO,* 722 F.2d at 49–50 n. 11.

The court determines that plaintiff's allegations state a claim for fraud. Plaintiff's federal claim is under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (1981), and S.E.C. Rule 10b–5, 17 C.F.R. § 240.10b–5. This statute prohibits fraud "in connection with the purchase or sale of any security." In order to state a claim for relief under section 10(b), a plaintiff must establish:

> (1) a misrepresentation or omission or other fraudulent device; (2) a purchase or sale of securities in connection with the fraudulent device; (3) scienter by defendant in making the misrepresentation or omission; (4) materiality of the misrepresentation or omission; (5) justifiable reliance on the fraudulent device by plaintiff (or due diligence against it); and (6) damages resulting from the fraudulent device.

*Warren v. Reserve Fund, Inc.,* 728 F.2d 741, 744 (5th Cir.1984). *Accord Burlington Industries, Inc. v. Edelman,* 666 F.Supp. 799, 813 (M.D.N.C.1987); *SEC v. Tome,* 638 F.Supp. 596, 620 (S.D.N.Y.1986); *Gilbert v. Bagley,* 492 F.Supp. 714, 727

(M.D.N.C.1980). Plaintiff's claim under Colorado law is for Colorado's version of section 10(b). Section 11–51–123 of the Colorado Securities Act is entitled "Fraudulent and other prohibited practices," and this section mirrors section 10(b) of the federal securities act. *Kerby v. Commodity Resources Inc.,* 395 F.Supp. 786, 790 (D.Colo.1975). Inasmuch as these statutes are identical, the court concludes that plaintiff's claim under Colorado law is a claim for fraud. The "rescission" of the contract is merely the remedy plaintiff seeks for the fraud defendants allegedly perpetrated. Furthermore, with plaintiff's claims properly characterized as fraud claims, the choice of law provision in the Joint Venture Agreement is inapplicable.

### V.

Accordingly, the remaining issue facing the court is what law would a North Carolina court apply to the state law securities claim in this action. This issue appears to be one of first impression under North Carolina law, and, accordingly, the court will apply the choice of law rules of the most analogous area of law. Since courts traditionally characterize fraud actions as tort actions, the court will apply the choice of law rules the North Carolina courts apply to tort actions. *See American Rockwool, Inc. v. Owens–Corning Fiberglas Corp.,* 640 F.Supp. 1411, 1429–30 (E.D.N.C. 1986) (noting that North Carolina Supreme Court has never addressed question of what law applies in multistate misrepresentation case, and analyzing unfair trade and competition claims under tort rules).

■ As stated earlier in this opinion, the North Carolina courts apply two different rules in tort actions. Under the traditional rule, the court applies the law of the place of injury. Under the modern rule, the court applies the law of the place having the "most significant relationship" to the allegedly tortious conduct. Having analyzed these cases, the court believes that the North Carolina courts would apply the modern rule in this case. The cases citing the modern rule involve construction of the North Carolina statute prohibiting unfair

and deceptive trade practices. N.C.Gen. Stat. § 75–1.1 (1987). *See Santana, Inc. v. Levi Strauss and Co.*, 674 F.2d 269 (4th Cir.1982); *American Rockwool*, 640 F.Supp. at 1429–32; *Andrew Jackson Sales v. Bi–Lo Stores, Inc.*, 68 N.C.App. 222, 314 S.E.2d 797 (1984); *Michael v. Greene*, 63 N.C.App. 713, 306 S.E.2d 144 (1983). *But see ITCO*, 722 F.2d at 49–50 n. 11 (4th Cir.1983) (applying traditional rule); *United Virginia Bank v. Air–Lift Associates, Inc.*, 79 N.C.App. 315, 339 S.E.2d 90 (1986) (same). Since this statute specifically prohibits deception, it is more akin to the present cause of action than the typical tort action.

The "most significant relationship" rule is, of course, the rule espoused in the *Restatement (Second) of Conflict of Laws* (1971). By combining presumptive jurisdiction-selecting rules with policy analysis, the *Restatement (Second)* arrives at a three-step process for solving choice of law problems. First, the court must select the appropriate jurisdiction-selecting rule. This selection is essentially the process of "characterization" discussed earlier in this opinion, and the court has characterized the present action as one for fraud. Second, the court must apply the rule for fraud cases to determine which state appears to have the most significant relationship to the occurrence and the parties. Finally, the court must evaluate its determination under step two to ensure that this determination comports with the general "Choice-of-Law Principles" delineated in section 6 of the *Restatement Second*.

Section 148 of the *Restatement Second*, which delineates the jurisdiction-selecting rules for fraud cases, states in pertinent part:

(1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

In the present case, the allegedly false representations apparently occurred in North Carolina. Representatives from Hutton's Winston–Salem, North Carolina, office approached John and Dudley Simms to inquire whether their company would be interested in participating in the Joint Venture. The meetings exploring the Simms's interest occurred in North Carolina. Similarly, the Simms's actions in reliance occurred in North Carolina. The Simms signed the Joint Venture Agreement and tendered the consideration under this contract in North Carolina. It does not appear that plaintiff participated in any type of meetings in Colorado, and the court is thus unable to conclude that defendants' representations or plaintiff's reliance occurred in Colorado. Finally, the court notes, without discussion, that the choice-of-law principles in § 6 do not indicate a contrary result.[1]

---

1. Section 6 of the *Restatement (Second) of Conflict of Laws* states:

   (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

   (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

   (a) the needs of the interstate and international systems,

   (b) the relevant policies of the forum,

   (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

   (d) the protection of justified expectations,

   (e) the basic policies underlying the particular field of law,

   (f) certainty, predictability and uniformity of result, and

   (g) ease in the determination and application of the law to be applied.

   This section delineates broad policy considerations that a court should balance when making a choice-of-law determination. These principles allow the court to analyze its decision to ensure that the court is applying the law of the state with the "most significant relationship" to the lawsuit. In the present case, the court is convinced that North Carolina is the state with the most significant relationship to the questioned transaction.

■ Even if the court were to apply the traditional choice of law rule for a tort action, the court would still conclude that North Carolina law applies in this case. As stated earlier, the traditional rule mandates the application of the law where the injury occurred. In a case alleging fraud, the place of injury is often uncertain. Since the North Carolina cases do not provide a method for determining the place of injury in a fraud case, the court will use the analysis delineated in the *Restatement (Second)*. The *Restatement Second* indicates that where the plaintiff's action in reliance involves the relinquishment of assets, as here:

> [T]he place of loss may be said with approximately equal persuasiveness to be either the place of relinquishment or the place where the plaintiff received the consideration for the relinquishment which turned out to be less than anticipated. When plaintiff's initial act of reliance is his entry into a contract by which he binds himself to relinquish assets, the place of loss may be considered to be either the place where the plaintiff entered into the contract or the place where he relinquished the assets pursuant to the terms of the contract, or finally the place where he received the consideration for the relinquishment.

*Restatement (Second) of Conflict of Laws,* Comment to § 148 (1971). In the present action, plaintiff is a North Carolina corporation. Plaintiff learned about the potential Joint Venture through a series of meetings in North Carolina and, eventually, signed the Joint Venture Agreement in North Carolina. Plaintiff then tendered payment for its investment to Hutton's North Carolina office. Clearly, if defendants' conduct injured plaintiff, the injury occurred in North Carolina.

Accordingly, the court concludes that North Carolina substantive law applies to Count II of plaintiff's complaint. The court will, therefore, dismiss the claim under Colorado law. The court notes, however, that plaintiff may have an action under North Carolina's blue sky laws. N.C. Gen.Stat. § 78A-8 appears identical to section 11-51-123(1) of the Colorado Securities

Act of 1981, and N.C.Gen.Stat. § 78A-56 provides a private right of action. Moreover, defendants apparently agree, based on the arguments in their briefs, that the "offer to sell" was made in North Carolina, thereby satisfying the provisions of N.C. Gen.Stat. § 78A-63(a). The court will thus grant plaintiff 20 days from the entry of this order to amend the complaint to allege a claim, if plaintiff desires, under these statutes.

### VI.

For the reasons stated, the court will file a separate order dismissing plaintiff's claims under the Colorado Securities Act. The court will further order that within 20 days from the entry of this opinion, the plaintiff may amend the complaint to allege a claim or claims under the North Carolina Securities Act.