**SPEEDWAY PROMOTERS, INC., d/b/a Grand Motor Sports, Plaintiff,**

v.

**HOOTER'S OF AMERICA, INC.; Hooter's Racing, Inc.; United Speed Alliance Racing, Inc.; and Super Sports Merchandisers, Inc., Individually and d/b/a Hooter's Cup, a Partnership or Joint Venture, Defendants.**

No. Civ. 1:99CV251.

United States District Court,
W.D. North Carolina,
Asheville Division.

Oct. 4, 2000.

Edward L. Bleynat, Jr., Asheville, NC, for Speedway Promoters, Inc. dba Grand Motorsports, plaintiff.

Robert B. Long, Jr., W. Scott Jones, Long, Parker & Warren, P.A., Asheville, NC, for Hooter's Inc., Hooter's of America, Inc., Hooter's Racing Inc., defendants.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Defendants' motion for summary judgment, opposed by the Plaintiff. For the reasons stated herein, the Defendants' motion is denied in part, granted in part, and the ruling on Plaintiff's claim for punitive damages is deferred until trial.

### I. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party, here the Plaintiff. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Defendants as the moving parties have the initial burden to show a lack of evidence to support the Plaintiff's case. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If this showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does exist. *Id.* Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [Plaintiff]." *Id.* A "mere scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* Moreover, in considering the facts of the case for purposes of the Defendants' motion, the Court will view the pleadings and material presented in the light most favorable to the Plaintiff, as the nonmoving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### II. STATEMENT OF FACTS

This action arises from dealings among Speedway Promoters, Inc., d/b/a/ Grand Motor Sports ("Speedway"), through its

agent, Russell Leicht, Jr. ("Leicht"), Action Performance Companies, Inc. ("Action"), and both the parent company, Hooters of America, Inc., and a number of subsidiaries thereof (collectively "Hooters"), through their agent or representative, Leonard Gough ("Gough"). Though Action is not a party to this lawsuit, it is nonetheless an integral entity within this conflict.

From 1992 to June 1996, Leicht was employed by Action. **Deposition of Russell Leicht, at 5.** Action produces and distributes racing collectibles (*i.e.*, diecast cars); Leicht oversaw licensing, tooling, and production of said collectibles. *Id.*, at 12–14. Some time in early 1996, Leicht, as a representative of Action, attended a Hooters Cup race to assess the feasibility of building a racing collectible series based thereon. *Id.*, at 25–26. There, Leicht was introduced to Gough by a mutual acquaintance and the two discussed Leicht's fledgling plans to build a racing collectibles series based on the Hooters Cup. *Id.*, at 30–32. After Gough initially expressed his interest in the program, Leicht returned to Action's headquarters and received authorization from the company president to proceed with the plan. *Id.*, at 43.

According to Leicht and Gough, they agreed that Leicht would obtain licenses from the Hooters Cup drivers to use their likeness for Hooters, arrange for Action to produce the racing collectibles, and finally, Leicht would personally distribute the collectibles. *Id.*, at 44; **Deposition of Leonard Gough, at 23–27.** Though this agreement was originally in the form of an oral contract, Leicht and Gough later signed some form of a written contract. *Id.*, at 27–28. Later, a letter sent by Leicht to Gough contained an accurate reporting of the terms to which they orally agreed. *Id.*; **Exhibit 9,** *attached to* **Leicht Deposition.**

Pursuant to this agreement, Leicht obtained licenses from four Hooters Cup drivers and proceeded with Action to produce an initial order of 40,000 collectibles.

**Leicht Deposition, at 70.** In producing this initial order, and in anticipation of several more Hooters Cup orders to come, Action spent approximately $150,000 in retooling. **Exhibit 10,** *attached* **to Leicht Deposition;** **Deposition of Fred Wagenhals, at 17–19.** As agreed, Action paid Hooters royalties for these collectibles from 1997 to 2000. **Exhibits 21, 28, and 33,** *attached to* **Appendix to Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment.** Half of the order was sent directly to dealers, while Leicht purchased the other half, at a cost of $75,000, for personal distribution. **Leicht Deposition, at 71.**

Shortly thereafter, Gough was fired. **Gough Deposition, at 17–18.** Though the motive is disputed, it is agreed that Rodney Foster, a member of Hooters management, ordered Action to cease production and distribution of the collectibles. **Wagenhals Deposition, at 19–20; Gough Deposition, at 33–34, 66; Deposition of Rodney Foster, at 29–35.** Action notified Leicht of Hooter's order that production and distribution cease. **Leicht Deposition, at 72–73.** Leicht, in turn, was left with 20,000 collectibles that he could not sell. *Id.*, at 73–74.

Concomitantly, Leicht planned to, and did, sponsor a racing team in the Hooters Cup. *Id.*, at 41–43. Though Leicht originally planned to enter a car in the Hooters Cup series in 1997, he pushed back his time frame and entered the series in 1996. *Id.* To help finance his racing team, Gough allegedly promised Leicht a $125,000 Pepsi sponsorship. *Id.*, at 81. This sponsorship was allegedly part of a larger deal for Pepsi to become the exclusive soft drink in Hooters establishments, though the parties disagree over whether this was a promised sponsorship or merely a sponsorship that was anticipated and hoped for. *Id.*, at 84; **Gough Deposition, at 40–42.** Nevertheless, it is undisputed that Leicht proceeded to have the Pepsi logo attached to his racing car and the uniforms of the racing team. **Leicht Deposition, at 81; Gough**

**Deposition, at 42.** Leicht's team raced in Hooters Cup races "under" the Pepsi logo on three or four occasions. **Leicht Deposition, at 83.** Shortly thereafter, Leicht was informed by someone at Pepsi that sponsorship money would not be forthcoming, and that Pepsi had never agreed with Hooters to sponsor a racing team. *Id.*, at 83–85.

## III. DISCUSSION

As a preliminary matter, Defendants claim that they are "entitled to a Summary Judgment that only one-half of whatever damages may be alleged or proven by Plaintiff are recoverable by Plaintiff." **Defendants' Memorandum in Support of Summary Judgment, at 5–6.** They claim they are entitled to this relief because the collectibles program and the racing team are owned in equal parts by Speedway and Leicht, but only Speedway is a named Plaintiff. *Id.*, at 5. This request is properly termed a request for a declaratory judgment. *See generally,* Fed.R.Civ.P. 57. In light of the Defendant's admission that Leicht is the agent of Speedway, the Court finds this request to be without merit. *See* **Defendants' Memorandum in Support of Summary Judgment, at 1.**

### A.

■ The first claim on which Defendants seek summary judgment is the alleged breach of contract which occurred when Hooters failed to provide the Pepsi sponsorship. In this diversity case, the Court must determine what law is to be applied. Because this involves a conflict of laws issue, the Court must look first to the forum state's choice of law provisions. *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (citations omitted). Under North Carolina law, when adjudicating a contract dispute, this Court is instructed to apply the principle of *lex loci*, which mandates that the substantive rights of the parties are controlled by the "state where the contract was made or, in certain instances, by the law of the state of performance." *Boudreau v. Baughman,* 322 N.C. 331, 336, 368 S.E.2d 849, 854 (1988).

■ Because Leicht cannot say where this contract was made, the Defendant argues that this Court should adopt the "significant relationship" rule promulgated by the Restatement (Second) of Conflict of Laws. **See Defendants' Memorandum in Support of Summary Judgment, at 7.** The Court declines to adopt that rule, and will instead apply the "law of the state of performance" as suggested in *Boudreau, supra.*[1] Here, the race car and attendant team are based in North Carolina and owned by residents of North Carolina. **Leicht Deposition, at 4–6, 24, 33–37.** Presumably, then, the Pepsi logo would be affixed to the race car in North Carolina, or would be garaged there shortly thereafter, and would also be affixed to the racing team's uniforms, which would be kept in North Carolina when the team was not racing. It also stands to reason that the sponsorship money, had it materialized, would have been received by the Plaintiff in North Carolina. Indeed, the only action that would have been taken out-of-state had the alleged contract terms been fulfilled would have been the mailing of the sponsorship check, from Georgia, to the Plaintiff in North Carolina. **See Defendants' Memorandum in Support of Summary Judgment, at 7.** Defendants' performance would have been completed by this act alone. In any event, the Court finds the place of performance for this alleged contract is clearly North Carolina. As such, North Carolina law applies. *See Boudreau,* 322 N.C. at 336, 368 S.E.2d at 854.

■ North Carolina has no statute of frauds governing contracts the duration of which exceeds one year. Plaintiff alleges through sworn depositions that an oral

---

1. The Court notes that the results, *i.e.*, the Court's finding that North Carolina law applies here, would be the same applying the "significant relationship" test.

contract was entered into, the terms of which provided that Plaintiff would receive $125,000 for racing under the Pepsi logo. Defendants dispute, also under oath, that a contract was ever formed. Defendants have not shown the "lack of evidence to support the Plaintiff's case" that warrants summary judgment. The Court finds that a genuine issue of material fact exists on which a jury must decide.

### B.

■ The second claim on which Defendants seek summary judgment involves the Hooters Cup racing collectibles series. It is not contested that the discussions giving rise to the alleged contract occurred in Georgia. **Leicht Deposition, at 45.** Thus, applying the principle of *lex loci*, the law of Georgia must be applied in construing this alleged contract. *Boudreau, supra.*

■ Defendants contend that the alleged contract is for a term of three years, renewable, and that as such, it runs afoul of the Georgia statute of frauds provision mandating the commitment to writing of any contract "that is not to be performed within one year from the making thereof." Ga.Code Ann. § 13–5–30. Plaintiff responds that the alleged contract is saved by another provision of the Georgia code that legitimizes those contracts which, though they run afoul of § 13–5–30, have been performed by one party, with acceptance by the other, or where one party has partially performed to such a degree that it would constitute a fraud for the other party to refuse to perform in response thereto. *See* Ga.Code Ann. §§ 13–5–31(2), (3). Alternatively, the Plaintiff argues that the alleged contract could have been performed within a one year period, and thus does not run afoul of the statute. *See National Independent Theatre Exhibitors, Inc. v. Charter Financial Group, Inc.,* 747 F.2d 1396 (11th Cir.1984) (**"The law in Georgia, although not recently articulated, appears to be that the statute of frauds does not bar enforcement of an oral contract if one side is a capable of completing his performance within one year."**) (citing *Johnson v. Watson,* 1 Ga. 348 (1846)). Because the Court finds, for the reasons explained below, that the Plaintiff has presented sufficient evidence of partial or complete performance to compel a full trial of these issues, the merits of this alternative theory need not be explored.

The existence of an agreement between Leicht and Gough to license, produce, and distribute racing collectibles is not contested. *Cf. Lemming v. Morgan,* 228 Ga.App. 763, 764, 492 S.E.2d 742 (1997) (**"[A] parol contract sought to be enforced based on part performance must be certain and definite in all essential particulars."**). Assuming *arguendo* that this agreement was not committed to writing and signed by·a Hooters representative, the Court must still consider the evidence proffered by Plaintiff to show complete, or partial, performance on its part, and acceptance of said performance by the Defendants. *See Blanton v. Moseley,* 133 Ga.App. 144, 145, 210 S.E.2d 368, 369 (1974). The Plaintiff obtained licenses from the Hooters Cup drivers to use their likenesses to produce racing collectibles. Plaintiff arranged for the production of said collectibles. Plaintiff orchestrated the shipment of half of the collectibles to a group of dealers, and bought the other half for personal distribution. Defendants received several royalty checks from the production and sale of a portion of the collectibles. These acts are far more than merely preparatory or preliminary to the performance of the contract; indeed, they are substantial and essential to fulfilling the terms of the contract. *See generally Utica Tool Co. v. Mitchell,* 135 Ga.App. 635, 637, 218 S.E.2d 650, 652 (1975); *Haehn v. Alheit,* 212 Ga. App. 252, 254, 441 S.E.2d 529, 530 (1994). On these facts, the Court does not hesitate to find that the Plaintiff has made a sufficient showing of partial or complete performance, coupled with Defendants' lack of performance, to present this issue to a

jury. *Cf. Haehn,* 212 Ga.App. at 254, 441 S.E.2d at 531. As such, the Court need not reach the question of third party beneficiary status, argued by the Plaintiff to be an alternate ground by which to assert their status as an injured party whose rights might be protected at law, at this time.

### C.

Defendants also seek summary judgment on the issue of damages, asserting that Plaintiff's alleged losses are, *inter alia,* speculative. The record before the Court is far too thin to dispositively decide this issue. Defendants' motion to dispose of this issue at this juncture is premature at best.

### D.

Similarly, the Court finds that a grant of summary judgment on the Plaintiff's claim in *quantum meruit,* pled as an alternate to the contract claims, is unwarranted. Even applying Georgia law to the issue, without deciding the propriety of so doing, the Court finds that the Plaintiff has alleged facts sufficient to warrant presenting the claim to a jury. *See Sanders v. Commercial Cas. Ins. Co.,* 226 Ga.App. 119, 122, 485 S.E.2d 264, 268 (1997).

### E.

■ Plaintiff also has alleged a claim for fraud. The essential elements for a fraud claim are: "(1) material misrepresentation of a past or existing fact; (2) the representation must be definite and specific; (3) made with knowledge of its falsity or in culpable ignorance of its truth; (4) that the misrepresentation was made with intention that it should be acted upon; (5) that the recipient of the misrepresentation reasonably relied upon it and acted upon it; and (6) that there resulted in damage to the injured party." *Rosenthal v. Perkins,* 42 N.C.App. 449, 451–52, 257 S.E.2d 63, 65 (1979); *accord, Pleasant Valley Promenade v. Lechmere, Inc.,* 120 N.C.App. 650, 663, 464 S.E.2d 47, 57 (1995).

■ The Court agrees with the Defendants that the sworn testimony of Leicht concerning the timetable of when he first intended to enter a race car in the Hooters Cup is perhaps less than certain. At points in his testimony he indicates that he originally planned to enter a racing team in the Hooters Cup in 1996, while at other times he states that only after Gough allegedly promised the Pepsi sponsorship did he commit to racing in 1996. *Compare* **Leicht Deposition, at 90–91** *with* **Leicht Deposition, at 53–57.** However, rather than compelling summary judgment on this issue, which goes to reliance and damages, the confusion noted necessitates a jury trial on this issue. A reasonable jury could find either, after hearing all of the evidence presented at a trial, a contract and subsequent breach by Defendants or that the Defendants fraudulently induced Plaintiff to believe that there was a contract, and thus return a verdict for the Plaintiff on this issue. See *Shaw,* 13 F.3d at 798.

### F.

■ Next, Defendants seek summary judgment on Plaintiff's claim for tortious interference with contract. "Under traditional choice of law rules, the law of the place of the tort determines a plaintiff's right to recover in an action for fraud or deceit." *Simms Inv. Co. v. E.F. Hutton & Co., Inc.,* 688 F.Supp. 193, 197 (M.D.N.C.1988). "[A] tort occurs at the place where the last event takes place that is necessary to render the actor liable. Since injury is the last element of a tort, the traditional North Carolina rule applies the law of the place of injury." *Id.* Though some North Carolina courts have applied a "most significant relationship" test, this Court agrees with the North Carolina Court of Appeals that "the better rule is the 'where the injuries are sustained' standard...." *United Virginia Bank v. Air-Lift Assoc., Inc.,* 79 N.C.App. 315, 322, 339 S.E.2d 90, 94 (1986) (quoting *Lloyd v. Car-*

*nation,* 61 N.C.App. 381, 388, 301 S.E.2d 414, 418 (1983)). Because the Court finds that the injury was sustained in North Carolina when Plaintiff was ordered to cease distribution of the racing collectibles, North Carolina law will apply to this claim for relief.

■ A tortious interference with contract claim has five elements: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contact; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in so doing acts without justification; (5) resulting in actual damage to plaintiff." *United Lab., Inc. v. Kuykendall,* 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988). The classic cases of tortious interference involve the hiring away of an employee under contract to compete directly against the former employee, as was the case in *United Laboratories,* or a threat made by a defendant to a third party in order to force that party to breach a contract with the plaintiff, with the purpose of injuring the plaintiff's business. See *American Craft Hosiery Corp. v. Damascus Hosiery Mills, Inc.,* 575 F.Supp. 816, 820–21 (W.D.N.C.1983).

■ In the case *sub judice,* even assuming the absolute truth of each of the Plaintiff's allegations, the behavior complained of amounts merely to a breach of contract. Plaintiff has failed to make a showing upon which a reasonable jury could conclude that in breaching the alleged contract Defendants acted " 'with a design to injure the plaintiff or gain some advantage at his expense.' " *Dalton v. Camp,* 531 S.E.2d 258, 265 (N.C.App. June 6, 2000) (quoting *Owens v. Pepsi Cola Bottling Co.,* 330 N.C. 666, 680, 412 S.E.2d 636, 644 (1992)). Plaintiff's bare assertion of Defendants' bad motive, which is the essence and gist of a tortious interference action, is not enough to survive a motion for summary judgment where it has failed to produce even a scintilla of evidence showing such motive. See *Pleasant Valley Promenade,* 120 N.C.App. at 657, 464 S.E.2d at 54 (citing *Cameron v. New Hanover Mem'l Hosp.,* 58 N.C.App. 414, 439, 293 S.E.2d 901, 916 (1982)). As such, Defendant's motion for summary judgment on this issue must be granted.

**G.**

■ Defendants also move for summary judgment on Plaintiff's allegations of civil conspiracy. Any injury suffered by the Plaintiff from this alleged conspiracy would have been sustained in North Carolina. Thus, North Carolina law applies to this action. See *Simms Inv. Co.,* 688 F.Supp. at 197. To succeed on an action for civil conspiracy the Plaintiff must show: "(1) an agreement between two or more persons to do a wrongful act; (2) an overt act committed in furtherance of the agreement; and (3) damage to the plaintiff." *Pleasant Valley Promenade,* 120 N.C.App. at 657, 464 S.E.2d at 54. While a "party may prove an action for civil conspiracy by circumstantial evidence, ... sufficient evidence of the agreement must exist 'to create more than a suspicion or conjecture in order to justify submission of the issue to a jury.' " *Dalton,* 531 S.E.2d at 267 (quoting *Dickens v. Puryear,* 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981)).

Here, Plaintiff avers that the allegation of breach of contract and tortious interference is enough to present this issue to a jury. Because the Court has found that no reasonable jury could find for the Plaintiff on its tortious interference claim, this allegation must survive, if at all, on the allegations of breach of contract. Plaintiff's proffered evidence of a conspiracy is limited to a decision by Hooters to breach the contract for the racing collectibles. Viewing the pleadings and materials presented in the light most favorable to the Plaintiff, the Court finds that the Plaintiff has failed to produce any evidence on which a reasonable jury could find in Plaintiff's favor on this count. "Put simply, '[a] party cannot prevail against a motion for summary

judgment by relying on conclusory allegations, unsupported by facts.'" *King v. N.C. Dep't of Transp.*, 121 N.C.App. 706, 708, 468 S.E.2d 486, 489 (1996) (quoting *Friel v. Angell Care Inc.*, 113 N.C.App. 505, 510, 440 S.E.2d 111, 114 (1994)) (other citations omitted).

### H.

If a jury determines that it is entitled to relief, Plaintiff claims that the corporate veil should be pierced. Defendants seek summary judgment on this claim. " 'A corporation which exercises actual control over another, operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus controlled. In such instances, the separate identities of parent and subsidiary or affiliated corporations may be disregarded.'" *Glenn v. Wagner*, 313 N.C. 450, 453, 329 S.E.2d 326, 330 (1985) (quoting *B–W Acceptance Corp. v. Spencer*, 268 N.C. 1, 8, 149 S.E.2d 570, 575 (1966)). "To pierce the corporate veil, a plaintiff must show: '(1) stock control and domination of finances, policy, and business practice with respect to the transaction attacked; (2) control used by the defendant to commit fraud or wrong; and (3) proximate cause.'" *McLeskey v. Davis Boat Works, Inc.*, 2000 WL 1008793, *3 (4th Cir.2000) (quoting *Glenn*, 313 N.C. at 456, 329 S.E.2d at 331). Factors indicating control and domination include "inadequate capitalization, noncompliance with corporate formalities, complete domination and control, excessive fragmentation of a single enterprise into separate corporations, siphoning of funds by a dominant shareholder, and absence of corporate records." *Id.*

■ Perhaps the most telling fact proffered by Plaintiff to pierce the corporate veil is Gough's response to the question why he had so many roles with so many Defendant companies: "[T]he way I understand was it was set up to be separate corporate identities from an accounting function to more easily capture expenses and income." **Gough Deposition, at 15.**

Gough further testified that a single individual, Bob Brooks, CEO of Hooters, appointed Gough to each of the positions in each of the companies in which he served. *Id.,* at 15–17. Rodney Foster could identify only Bob Brooks as a shareholder of Hooters of America, Inc., the parent company of Hooters Racing, Inc., United Speed Alliance Racing, Inc., and Super Sports Merchandisers, Inc. **Foster Deposition, at 9–10.** Foster also testified under oath that titles within the Hooters organization are variable, and that each of the subsidiary organizations works to achieve common goals for Hooters of America, Inc. *Id.,* at 12. Gough was dismissed because of a personality conflict with Foster and Brooks, neither of whom allegedly worked within the company to which Gough was assigned, and Foster immediately thereafter assumed the responsibilities once shouldered by Gough. *Id.,* at 16–19, 24–31. Foster himself directed Action to cease production and distribution of the racing collectibles. *Id.,* at 28–30. Other indicia of complete corporate domination and control, coupled with damages caused therefrom, exist in the record, but the Court is satisfied by reference to the above mentioned indicia alone that Plaintiff has presented sufficient evidence to present this claim to a jury.

### I.

Plaintiff's tortious interference and conspiracy claims cannot serve as the basis for their unfair and deceptive trade practices prayer for relief, as the Court has granted Defendants' motion for summary judgment on each of said claims. Thus, for Plaintiff to survive Defendant's motion for summary judgment on the unfair and deceptive trade practices allegation, Plaintiff must offer some other grounds and evidence on which a reasonable jury could find in its favor.

■ Plaintiff must demonstrate the existence of three factors to succeed on this claim: " '(1) an unfair or deceptive act or

practice, or unfair method of competition, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business.'" *Dalton,* 531 S.E.2d at 264 (quoting *Murray v. Nationwide Mut. Ins. Co.,* 123 N.C.App. 1, 9, 472 S.E.2d 358, 362 (1996)). A trade practice is unfair when " 'it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers,'" and is deceptive if it " 'has the capacity or tendency to deceive.'" *Id.* (quoting *Edwards v. West,* 128 N.C.App. 570, 574, 495 S.E.2d 920, 924 (1998)).

▆▆▆ Plaintiff claims that "[t]o cancel and interfere with valid contracts as a result of internal strife among defendants and of internal complaints about the deal negotiated by the top corporate racing official under the CEO level is the very type of conduct that unfair commercial practices legislation is intended to govern." **Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment, at 37–38.** Assuming that all of Plaintiff's allegations concerning Defendants' conduct are true, the conduct alleged amounts to run-of-the-mill breach of contract. Plaintiff argues that this case is something more by virtue of the fact that Hooters is the larger of corporations and knew that Plaintiff expected them to fulfill the terms of the contract. Contracts, by definition, are expectations promised to be fulfilled. "It is well established that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under G.S. section 75–1.1 [ (unfair and deceptive trade practices) ]. Rather, substantial aggravating circumstances attendant to the breach must be shown." *Computer Decisions, Inc. v. Rouse Office Management of N.C.,* 124 N.C.App. 383, 390, 477 S.E.2d 262, 266 (1996). The question then, even assuming that each of Plaintiff's allegations are true, is whether the Plaintiff has made any showing of substantial aggravating circumstances. The Court finds "[t]his the plaintiff has not done." *Id.*

**J.**

Finally, the Court declines to address the issue of punitive damages at this time, and reserves judgment on this issue until the close of Plaintiff's case-in-chief.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' motion for summary judgment on Plaintiff's claims of tortious interference with contract, civil conspiracy, and unfair and deceptive trade practices is **GRANTED,** and these claims are hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Defendants' motion for summary judgment on Plaintiff's two claims for breach of contract and the claims for restitution, fraud, and piercing the corporate veil is hereby **DENIED.**

**IT IS FURTHER ORDERED** that the Defendants' motion for summary judgment on Plaintiff's claim for punitive damages is hereby **DEFERRED** for consideration at the close of Plaintiff's evidence at trial.